TERESA C. CHOW (SBN 237694)
*tchow@bakerlaw.com*
ALEXANDER VITRUK (SBN 315756)
*avitruk@bakerlaw.com*
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone: 310.820.8800
Facsimile: 310.820.8859

PAUL G. KARLSGODT (*admitted pro hac vice*)
*pkarlsgodt@bakerlaw.com*
**BAKER & HOSTETLER LLP**
1801 California Street Suite 4400
Denver, CO 80202
Telephone: 303.861.0600
Facsimile: 303.861.7805

*Attorneys for Defendant*
SHARP HEALTHCARE

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

HANNAH COUSIN, LINDA CAMUS, DEANNA FRANKLIN-PITTMAN, and EDWARD BARBAT individually and on behalf of all others similarly situated,

Plaintiffs,

v.

SHARP HEALTHCARE,

Defendant.

Case No.: 3:22-cv-02040-MMA-DDL

**DEFENDANT SHARP HEALTHCARE'S NOTICE OF MOTION AND MOTION TO DISMISS**

Date: May 8, 2023
Time: 2:30 p.m.
Location: Ctrm 3C
Judge: Hon. Michael M. Anello

Action Filed: 11/22/2022
Consolidated Action Filed: 03/03/2023

**TO THE HONORABLE COURT, AND TO PLAINTIFFS AND THEIR COUNSEL OF RECORD HEREIN:**

**NOTICE IS HEREBY GIVEN** that on May 8, 2023 at 2:30 p.m., in Courtroom 3C, 3rd Floor of the above-entitled Court located at 221 West Broadway, San Diego, CA 92102, Defendant SHARP HEALTHCARE ("Defendant") will and hereby does move the Court to dismiss the above-captioned action pursuant to Federal Rule of Civil Procedure 12(b)(6). This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiffs fail to state a claim against Defendant upon which relief can be granted.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, all pleadings, papers and records on file in this Action, and such other oral argument and documentary evidence as may be presented at or before the time of adjudication of this Motion.

Dated: April 3, 2023

**BAKER & HOSTETLER LLP**

By: */s/Teresa C. Chow*
TERESA C. CHOW

*Attorneys for Defendant*
SHARP HEALTHCARE

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ........ 8

II. CONSOLIDATED COMPLAINT ........ 9

III. LEGAL STANDARD ........ 12

IV. ARGUMENTS AND AUTHORITIES ........ 12

A. Plaintiffs Fail to State a Breach of Fiduciary Duty Claim (Count I). . 12

B. Plaintiffs Invasion of Privacy – Intrusion Upon Seclusion Claim (Count II) Fails to State a Claim. ........ 14

1. There can be No Intrusion Upon Seclusion Because the Alleged Intrusion, If Any, Was Carried Out by a Third Party. ........ 14

2. Plaintiffs Fail to Plead Facts Showing that Sharp Engaged in "Highly Offensive" Conduct. ........ 16

C. Plaintiffs Fail to State an Invasion of Privacy – California Constitution Claim (Count III) ........ 18

D. Plaintiffs Fail to State a CMIA Claim (Count IV). ........ 20

1. Plaintiffs Fail to Allege Facts Showing any Medical Information or Medical Records have been Transmitted ........ 20

2. Plaintiffs Fail to Allege Facts Showing that Anyone at Meta Actually Viewed any Medical Information ........ 22

E. Plaintiffs Fail to State a CIPA Claim (Count V). ........ 24

1. Plaintiffs Fail to Plead Facts Sufficient to Show that Sharp Aided and Abetted Meta to Commit Wrongdoing. ........ 25

2. Plaintiffs do not Plead Facts Showing that "Content Information" was Disclosed to Meta ........ 27

3. Plaintiffs do not Plead Facts Showing that any Interception "In Transit" has Occurred. ........ 28

V. CONCLUSION ........ 29

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen v. Cnty. Of Sonoma*, No. 17-cv-00448-YGR, 2017 WL 3593340 (N.D. Cal. Aug. 18, 2017) .......... 20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 12, 20

*Barbour v. John Muir Health*, No. C22-01692, 2023 WL 2618967 (Cal. Super. Ct. Jan. 5, 2023) .......... 23

*Bates v. Arata*, No. C 05-3383 SI, 2008 WL 820578 (N.D. Cal. Mar. 26, 2008) .......... 20

*Baugh v. CBS, Inc.*, 828 F. Supp. 745 (N.D. Cal. 1993) .......... 14

*Beckington v. Am. Airlines, Inc.*, 926 F.3d 595 (9th Cir. 2019) .......... 12

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 12

*Blanco v. Cnty. of Kings*, 142 F. Supp. 3d 986 (E.D. Cal. 2015) .......... 19

*Clausing v. S.F. Unified Sch. Dist.*, 221 Cal. App. 3d 1224 (1990) .......... 19, 20

*Covenant Care,* 32 Cal.4th at 790 (Cal. 2004) .......... 25

*Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643 (9th Cir. 2019) .......... 12

*Deteresa v. Am. Broad. Cos.*, 121 F.3d 460 (9th Cir. 1997) .......... 16

*Eisenhower Med. Ctr. v. Super. Ct.*, 226 Cal. App. 4th 430 (2014) .......... 22

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 608 (9th Cir. 2020) .......... 17, 18, 28, 29

*In re Google, Inc. Privacy Policy Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) .......... 17, 18, 19

*Hammerling v. Google LLC*,
No. 21-cv-09004-CRB, 2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) .......... 17

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .......... 18

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) (en banc) .......... 16

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 17, 19

*Kurowski, et al. v. Rush Sy. for Health*,
Case No. 22 C 5380, 2023 WL 2349606 (N.D. Ill. Mar. 3, 2023) .......... 15, 17, 22

*Lopez v. Apple, Inc.*,
519 F. Supp. 3d 672, 689 (N.D. Cal. 2021) .......... 18

*Low v. LinkedIn Corp.*,
900 F.Supp.2d 1010 (N.D. Cal. 2012) .......... 16, 17, 18, 19

*In re Lynette G.*,
54 Cal. App. 3d 1087 (1976) .......... 26

*In re Meagan R.*,
42 Cal. App. 4th 17 (1996) .......... 26

*Moore v. Regents*,
51 Cal.3d 120 (1990) .......... 13

*People v. Beeman*,
35 Cal. 3d 547 (1984) .......... 26

*People v. Laster*,
52 Cal. App. 4th 1450 (1997) .......... 26

*People v. McCoy*,
25 Cal. 4th 1111 (2001) .......... 26

*People v. Pacheco*,
76 Cal. App. 5th 118 (2022) .......... 25

*People v. Perez*,
35 Cal. 4th 1219 (2005) .......... 25

*People v. Vaughn*,
77 Cal. App. 5th 609 (2022) .......... 26

*Raines v. U.S. Healthworks Med. Grp.*,
No. 19-CV-1539-DMS-MSB, 2021 WL 5763831 (S.D. Cal. Jan. 25, 2021) .......... 15, 16

*Regents of Univ. Cal. v. Super. Ct.*,
220 Cal. App. 4th 549 (2013) .......... 22

*Roberts v. Levinie*,
No. 19-cv-567-WQH-BLM, 2019 WL 5650626 (S.D. Cal. Oct. 30, 2019) .......... 14

*Seaton v. Mayberg*,
610 F.3d 530 (9th Cir. 2010) .......... 13

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017), aff'd, 745 F. App'x 8 (9th Cir. 2018) .......... 21, 27, 28, 29

*Steinberg v. CVS Caremark Corp., et al.*,
899 F. Supp. 2d 331 (E.D. Pa. 2012) .......... 15

*Sutter Health v. Super. Ct.*,
227 Cal. App. 4th 1546 (2014) .......... 14, 22, 23

*Towles v. Dzurenda*,
735 Fed. Appx. 440 (9th Cir. 2018) .......... 13

*Wagner Aeronautical, Inc.*, No. 21-cv-0994-L-AGS, 2022 WL 4295261, at * 5 (S.D. Cal. Sept. 16, 2022) .......... 12

*Webb v. Smart Document Sols., LLC*,
499 F.3d 1078 (9th Cir. 2007) .......... 13

*Wilkerson v. Shinseki*,
606 F.3d 1256 (10th Cir. 2010) .......... 13


BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Wilson v. Rater8, LLC*, No. 20-cv-1515-DMS, LL, 2021 WL 4865930, at *1(S.D. Cal. Oct. 18, 2021) .......... 21

*In re Zynga Privacy Litig.*, 750 F.3d 1098 (9th Cir. 2014) .......... 27, 28

**Statutes**

Cal. Code Civ. Proc. § 56 .......... *passim*

Cal. Pen. Code § 1 .......... 25

Cal. Pen. Code § 31 .......... 9, 25

Cal. Pen. Code § 630 .......... 11

Cal. Pen. Code § 631 .......... 9, 23, 24, 25

Cal. Pen. Code § 637.2(a) .......... 25

**Rules**

Fed. R. Civ. P. 12(b)(6) .......... 8, 9, 12

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# MEMORANDUM OF POINTS & AUTHORITIES

Defendant Sharp Healthcare ("Sharp") respectfully submits this Memorandum of Points and Authorities in support of its Motion to Dismiss Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).

## I. INTRODUCTION

In their Consolidated Complaint, Plaintiffs Hannah Cousin, Linda Camus, DeAnna Franklin-Pittman, and Edward Barbat ("Plaintiffs") claim that Sharp installed a commonly used advertising technology called the Meta Pixel on Sharp's public-facing website. Plaintiffs notably do *not* allege that the Pixel was installed in Sharp's secure patient portal, an online platform that allows patients to access portions of their health information. Plaintiffs claim that the Pixel caused information about their browsing of the public website to be transmitted to Meta Platforms, Inc. ("Meta") when patients used the public website.

Plaintiffs' Consolidated Complaint should be dismissed for failure to state a claim under Rule 12(b)(6) because Plaintiffs have failed to allege facts sufficient to plausibly satisfy the elements of each of their five (5) claims.

The breach of fiduciary duty claim fails because (a) there is no common law duty of confidentiality in California concerning the protection of medical information; and (b) even if there were such a duty, Plaintiffs do not state *facts* showing that Sharp disclosed any of their actual medical information or the contents of any confidential medical communications with their medical providers.

The invasion of privacy – intrusion upon seclusion claim fails because (a) there can be no intrusion upon seclusion because the alleged intrusion, if any, was carried out by a third party, Meta; and (b) Plaintiffs fail to plead facts showing that Sharp engaged in any "highly offensive" conduct by installing commonly used advertising technologies on its public website.

The invasion of privacy – California Constitution claim fails for the same reason their invasion of privacy – intrusion upon seclusion claim fails, and because money damages are unavailable.

The California Confidentiality of Medical Information Act ("CMIA"), Section 56 *et seq*. claim fails because (a) Plaintiffs fail to allege facts showing any medical information or medical records have been transmitted; and (b) Plaintiffs fail to allege facts showing that anyone at Meta actually viewed any medical information.

The California Invasion of Privacy Act, Cal. Pen. Code § 631 ("CIPA") claim fails because (a) Plaintiffs fail to plead facts sufficient to show that Sharp aided and abetted Meta to commit wrongdoing under Cal. Pen. Code § 31; (b) Plaintiffs do not allege facts showing that the "contents" of their alleged communications were transmitted to Meta; and (c) the Pixel does not intercept communications "in transit."

Accordingly, Sharp respectfully moves the Court to dismiss Plaintiffs' Consolidated Complaint *with prejudice* under Rule 12(b)(6).

## II. CONSOLIDATED COMPLAINT

Defendant Sharp is a nonprofit corporation that owns and operates Sharp Memorial Hospital in San Diego, California. *See* Compl. ¶ 14. Sharp maintains the public website www.sharp.com. *Id*. ¶¶ 8, 31-32. The Sharp public website provides a wide variety of information and conveniences to patients, families, employees, medical professionals, medical students, charitable donors, and the public at large. *Id*. ¶¶ 11-12, 40, 41 n. 36, 44, 36, 50, 53, 60.

Plaintiffs generally allege that code on Sharp's public website permits certain information to be transmitted to Meta through the Meta Pixel. *Id*. ¶¶ 3-5. Plaintiffs notably do ***not*** allege that the Pixel was embedded on the private patient portal, a secure online platform that allows patients to access portions of their health information.

Speculating about a hypothetical plaintiff (not themselves), Plaintiffs allege that, "[t]hrough the Meta Pixel, Sharp shares its patients' identities and online



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

activity, including information and search results related to their private medical treatment." *Id.* ¶ 39. Plaintiffs also discuss an alleged scenario of "when a [hypothetical] plaintiff enters www.sharp.com/hospitals/memorial and searches for a doctor" (*id.* ¶ 40), providing hypothetical examples of information that allegedly ***could*** be disclosed to Facebook (*id.* ¶¶ 40-63). Plaintiffs further allege that Meta can identify hypothetical users of Sharp's website through the use of Facebook ID, cookies, and browser identifier. *Id*. ¶¶ 47-61.

Plaintiffs also freely use the word "communications" throughout the Consolidated Complaint, giving the impression that actual patient-doctor communications could theoretically be shared with Meta. Tellingly, Plaintiffs do not go so far as to allege that the contents of any of *their* patient-doctor communications have ever been disclosed to Meta. Rather, Plaintiffs have carefully crafted their Complaint to suggest that their sensitive information was transmitted to Meta, without actually identifying what specific information was transmitted.

By way of example, Plaintiffs allege that booking an appointment online "requires you to fill out medical and personal information such as reason for the visit, name, email, phone number, address, and, as an option, social security number." *Id*. ¶ 65. But Plaintiffs never state facts showing that such specific information about themselves has been transmitted to Meta.

Instead, Plaintiffs generically state that the Meta Pixel "gather[ed] Plaintiffs' sensitive personal and health information and share it with Meta" without providing any specifics about what they actually mean by "sensitive personal and health information." *Id*. ¶ 67.

At most, Plaintiffs allege merely that information transmitted identifies the pages and certain content from those pages on Sharp's public website that a hypothetical user visited. *Id*. ¶¶ 40-63.

As to themselves, Plaintiffs allege the following:



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- Plaintiff Cousin allegedly "used Sharp's appointment scheduling page . . . [t]o make appointments, research and communicate with her doctors, and to receive test results," and entered "personal information, as well as sensitive medication information to dictate the reason for her visit to Sharp." *Id.* ¶ 10.
- Plaintiff Camus allegedly "used the website to look for providers." *Id.* ¶ 11.
- Plaintiff Franklin-Pittman allegedly "used the website to look for providers and book appointments." *Id.* ¶ 12.
- Plaintiff Barbat allegedly "used Sharp's website for various activities such as making payments, scheduling appointments, resetting his password with personal and confidential information, searching for medical specialists, sending personal and confidential messages to health care providers and other related health matters." *Id.* ¶ 13.

Notably, although they make specific allegations about their own activity on the Sharp website, Plaintiffs do not identify any specific sensitive information of theirs that was transmitted to Meta. Instead, for example, Plaintiffs Camus, Franklin-Pittman, and Barbat summarily allege that their "communications . . . contained personally identifiable information, protected health information, and related confidential information." *Id.* ¶¶ 11-13. Plaintiffs do not provide any supporting facts for their conclusory assertions, much less explain how they themselves, as opposed to some hypothetical plaintiff, "disclosed" any medical information at all. *Id.*

Based on those allegations, Plaintiffs attempt to assert five (5) causes of action: (1) breach of fiduciary duty; (2) invasion of privacy – intrusion upon seclusion; (3) invasion of privacy – violation of California Constitution, Article I, Section 1; (4) violation of CMIA (Cal. Civ. Code § 56 *et seq.*); (5) violation of CIPA (Cal. Pen. Code § 630 *et seq.*). Compl. ¶¶ 117-164. Plaintiffs seek to represent a putative class of "[a]ll natural persons in California who, within the applicable statute of limitations,



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

used the Sharp scheduling page and had their personal information collected through Meta Pixel." *Id.* ¶ 107.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal if a complaint fails to state a claim upon which relief can be granted. To survive a motion to dismiss, the complaint "must contain sufficient 'well-pleaded, nonconclusory factual allegation[s],' accepted as true, to state 'a plausible claim for relief.'" *Beckington v. Am. Airlines, Inc.*, 926 F.3d 595, 604 (9th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679-80 (2009)). Factual allegations must be enough to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal is appropriate when the complaint lacks a "cognizable legal theory" or sufficient factual allegations to "support a cognizable legal theory." *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 652-53 (9th Cir. 2019).

## IV. ARGUMENTS AND AUTHORITIES

### A. Plaintiffs Fail to State a Breach of Fiduciary Duty Claim (Count I).

To state a claim for breach of fiduciary duty, a plaintiff must show "1) existence of a fiduciary relationship; 2) its breach; and 3) damage proximately caused by that breach." *Wagner Aeronautical, Inc.*, No. 21-cv-0994-L-AGS, 2022 WL 4295261, at *5 (S.D. Cal. Sept. 16, 2022) (quotations and citation omitted). Because Plaintiffs fail to establish any of these elements, the Court should dismiss their breach of fiduciary duty claim.

Plaintiffs claim that "[a]s a healthcare provider, Sharp has a fiduciary relationship to its patients, like Plaintiffs and the Class members." Compl. ¶ 120. Sharp allegedly "was provided with and stored Plaintiffs' and Class members' sensitive health information, and owes them, at a minimum a duty of confidence and confidentiality," and "owed a fiduciary duty under common law to Plaintiffs and Class Members to exercise the utmost care in obtaining, retaining, safeguarding, and protecting their sensitive health information in its possession from being disclosed



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

to, accessed by, and misused by unauthorized persons." *Id.* ¶¶ 121-22. Sharp allegedly "breached the duties owed to Plaintiffs and Class members by installing the Meta Pixel on the appointment scheduling page and disclosing Plaintiffs' and Class members' sensitive health information without their consent to Meta." *Id.* ¶ 123.

First, Plaintiffs' breach of fiduciary duty claim is predicated on a "duty of confidence and confidentiality," (Compl. ¶ 121) but, even if any of the information at issue constituted medical information (it does not), there is no common law duty of confidentiality in California concerning such information; rather, the CMIA governs confidentiality of medical information. *See generally* Cal. Civ. Code § 56 *et seq*. Moreover, the California Supreme Court has expressly held that a hospital does not owe a fiduciary duty to patients. *Moore v. Regents*, 51 Cal.3d 120, 133 (1990). Accordingly, Plaintiffs do not—and cannot—plead facts sufficient to establish the existence of a fiduciary duty of confidentiality as to medical information under common law.

To the extent Plaintiffs' breach of fiduciary duty claim is predicated on the Health Insurance Portability and Accountability Act ("HIPAA") (Compl. ¶¶ 38, 73-79, 86-88, 139, 161), this federal statute is administrative in nature—it provides rules for hospital systems to conform to or face administrative penalties. *See generally* Pub. L. 104–191, 110 Stat. 1936. It does not permit a private cause of action and, therefore, cannot be found to establish any duty owed by Sharp to Plaintiffs. *See Webb v. Smart Document Sols., LLC*, 499 F.3d 1078, 1080 (9th Cir. 2007); *Towles v. Dzurenda*, 735 Fed. Appx. 440, 440 (9th Cir. 2018) (finding the district court properly dismissed claim alleging HIPAA violations because "there is no private right of action under the statute."); *Seaton v. Mayberg*, 610 F.3d 530, 533 (9th Cir. 2010) (same); *see also Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 n.4 (10th Cir. 2010) (finding HIPAA does not create a private right of action for alleged disclosures of confidential medical information).

Second, even assuming without conceding that Plaintiffs could establish some sort of common law duty of confidentiality, the Complaint does not state facts showing that Sharp breached any duty, *i.e.,* disclosed any Plaintiffs' medical information or the content of any confidential communications with their medical providers. *See generally* Compl.

Moreover, the California Court of Appeal explained that "[n]o breach of confidentiality takes place until an unauthorized person views the medical information. . . . [w]ithout an actual breach of confidentiality, the loss of possession is not actionable under section 56.101." *Sutter Health v. Super. Ct.*, 227 Cal. App. 4th 1546, 1557 (2014). As explained *infra* 22-23, Plaintiffs have not pled facts showing that anyone at Meta actually viewed their confidential information.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## B. Plaintiffs' Invasion of Privacy – Intrusion Upon Seclusion Claim (Count II) Fails to State a Claim.

Plaintiffs' intrusion upon seclusion claim fails as a matter of law for two independent reasons. First, Plaintiffs' claim fails because the alleged intrusion, if any, is carried out by a third-party, Meta—not by Sharp. Second, Plaintiffs fail to plead facts showing that Sharp engaged in "highly offensive" conduct, another essential element of their claim.

### *1. There can be No Intrusion Upon Seclusion Because the Alleged Intrusion, If Any, Was Carried Out by a Third Party.*

"[T]he tort of intrusion … upon seclusion, requires: (1) the defendant's intentional intrusion into a private place…." *Roberts v. Levinie*, No. 19-cv-567-WQH-BLM, 2019 WL 5650626, at *8 (S.D. Cal. Oct. 30, 2019) (citation omitted). "Intrusion upon seclusion is shown when one [] intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private concerns . . . if the intrusion would be highly offensive to a reasonable person." *Baugh v. CBS, Inc.*, 828 F. Supp. 745, 757 (N.D. Cal. 1993) (internal quotations and citation omitted).

The tort describes the "spying or prying into the private lives of another" and does not include mere disclosure of medical information to third parties. *Raines v. U.S. Healthworks Med. Grp.*, No. 19-CV-1539-DMS-MSB, 2021 WL 5763831, at *9 (S.D. Cal. Jan. 25, 2021) (dismissing intrusion upon seclusion claim involving alleged personal health history); *see also Steinberg v. CVS Caremark Corp., et al.*, 899 F. Supp. 2d 331, 342–43 (E.D. Pa. 2012) (finding no intrusion upon seclusion claim can be brought where defendant legitimately obtains information from a plaintiff, even if the facts are later disclosed to a third party).

A recent, directly-on-point decision from the Northern District of Illinois regarding a virtually identical complaint instructed: "The question is therefore whether Kurowski has alleged sufficient facts to allow an inference that [the health care provider] intruded upon its patients' seclusion when it allowed third-party source code to collect the data Kurowski alleges it later disclosed. The Court concludes she has not." *See Kurowski, et al. v. Rush Sy. for Health*, Case No. 22 C 5380, 2023 WL 2349606, at *9 (N.D. Ill. Mar. 3, 2023). The court elaborated:

> It is clear from Kurowski's complaint that the core of her claim is Rush's deployment of third-party source code that causes the transmission of patient data. As discussed with respect to count 1, the allegedly intercepted communications were intended to reach Rush. This is underscored by the theme underlying most of Kurowski's allegations, namely, that patients trusted that communications and queries directed at Rush, their health care provider, would be kept private. In other words, harm for which Rush is responsible, if any, is its disclosure of patient data (which, as alleged, is not protected private health information)—not the obtaining of that data. The actual intrusion upon patients' seclusion, via interception of their communications, is carried out by third parties.

*Id.*

Here, too, Plaintiffs allege only that Sharp's deployment of third-party source code causes the transmission of data to be disclosed to Meta. *See* Compl. ¶¶ 3-5. As in *Kurowski*, and consistent with Ninth Circuit case law, the actual alleged intrusion

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

upon patients' seclusion, if any, is carried out by a third party, not Sharp, thus precluding an intrusion upon seclusion claim against Sharp as a matter of law. Since amendment would be futile, the claim should be dismissed with prejudice.

***2. Plaintiffs Fail to Plead Facts Showing that Sharp Engaged in "Highly Offensive" Conduct.***

Separately, Plaintiffs have not alleged any conduct that is "highly offensive" to a person with ordinary sensibilities, and so, they fail to state a tort claim for intrusion upon seclusion. A person who "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Raines*, 2021 WL 5763831 at *9; RESTATEMENT (SECOND) OF TORTS § 652(B) (AM. L. INST. 1977).

In determining the degree of offensiveness, "courts consider, among other things: 'the degree of the intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded.'" *Deteresa v. Am. Broad. Cos.*, 121 F.3d 460, 465 (9th Cir. 1997) (quoting *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 26 (1994) (en banc)). California district courts have thus recognized the "high bar for an invasion of privacy claim." *See Low v. LinkedIn Corp.*, 900 F.Supp.2d 1010, 1025 (N.D. Cal. 2012).

The conduct alleged in the Complaint falls far short of this high bar. *Id*. There are no factual allegations establishing anything that Sharp may have done, or any information Sharp may have transmitted to Meta, that would demonstrate a "highly offensive . . . degree of [] intrusion," let alone allege sufficient "context" regarding the "intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded.'" *Deteresa*, 121 F.3d at 465. The crux of Plaintiffs' allegations against Sharp is that it embedded Meta's proprietary tracking technology, which then allegedly used some unidentified information about



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

users of Sharp's public website (including on the "appointment scheduling page") to provide advertising about services that may be of interest to them. *See generally* Compl. ¶¶ 40-63. Because Plaintiffs fail to allege facts showing that Sharp engaged in highly offensive conduct, it is appropriate for the Court to dismiss this claim with prejudice. *See Hammerling v. Google LLC*, No. 21-cv-09004-CRB, 2022 WL 17365255, at **8-9 (N.D. Cal. Dec. 1, 2022) (dismissing intrusion upon seclusion claim because the tracking of plaintiff's bank, where she kept her investments, what car she drove, where she reads her news, interests, use of apps, and that she was physically active is not highly offensive.).

Similarly, in *In re Google, Inc. Privacy Policy Litig*. (N.D. Cal. 2014), the Northern District of California found no highly offensive conduct when Plaintiffs alleged that Google surreptitiously tracked their browsing data while using Google's services. 58 F. Supp. 3d 968, 987–88. *See also Low*, 900 F. Supp. 2d at 1025 (LinkedIn's disclosure of users' browser history to third parties was not highly offensive); *In re iPhone Application Litig*., 844 F. Supp. 2d 1040, 1060, 1063 (N.D. Cal. 2012) (disclosures of unique device identification number, personal data, and geolocation information without consent were not an egregious breach of social norms).

The *Kurowski* court also explained that a similarly situated patient's alleged online communications were "not protected private health information," even if they "identifie[d] an individual patient by name." *Kurowski*, 2023 WL 2349606 at **6, 9. On this separate ground, *Kurowski* granted the healthcare provider's motion to dismiss the plaintiff's intrusion upon seclusion claim. *Id*. at *9; *id*. at *5 ("Kurowski has not alleged sufficient facts, however, to support an inference that Rush disclosed its patients' individually identifiable health information . . ."); *id*. at *6 ("Kurowski fails to allege the disclosure of any information related to the provision of treatment to her or other similarly situated Rush patients.").



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Plaintiffs are expected to lean on *In re Facebook Tracking Litigation, Inc. Internet Tracking Litig*, but that case involved "highly offensive" conduct because Meta allegedly had (a) secretly collected sensitive information from plaintiffs' private Facebook accounts, including their "political and religious affiliations" and "employment histor[ies]," (b) correlated that specific sensitive information with the plaintiffs' browsing history, (c) even while the plaintiffs were logged off and not using Facebook services, thus creating a "cradle-to-grave profile…." 956 F.3d 599, 606 & n.8, (9th Cir. 2020). No such facts are alleged here (nor in *Low*, *In re Google, Inc. Privacy Pol'y Litig*., etc.). More importantly, no such facts are alleged *against Sharp*, who is situated differently from Meta. Indeed, while Meta allegedly created the Pixel that intercepted communications and leveraged data to connect advertisers with users, Plaintiffs' theory of liability against Sharp is that it allegedly "procured" Meta and "facilitate[d] this wiretap" by causing the Pixel to be installed on its public website and appointment scheduling page. Compl. ¶¶ 157-58. Accordingly, *Facebook Tracking Litigation* does not control here.

For each of the above stated reasons, Plaintiffs have not pled facts sufficient to state an intrusion upon seclusion claim. The claim should be dismissed with prejudice.

**C. <u>Plaintiffs Fail to State an Invasion of Privacy – California Constitution Claim (Count III).</u>**

A privacy claim under the California Constitution requires a showing of: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by the defendant that amounts to a serious invasion of the protected privacy interest. *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009). Since Plaintiffs fail to plead facts satisfying any of these elements, their privacy claims should be dismissed.

Plaintiffs' common law and constitutional privacy claims are "functionally identical" both as a matter of law and as pled. *See, e.g., Lopez v. Apple, Inc.*, 519 F.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Supp. 3d 672, 689 (N.D. Cal. 2021) ("[T]he California Supreme Court has moved toward treating the tort and constitutional privacy inquiries as functionally identical, although the claims do continue to exist as separate claims with technically distinct elements."). Indeed, both claims are based on the same allegations. Compl. ¶¶ 117-144. Thus, the Constitutional claim should fail for the same reasons as the common law claim.

At a minimum, there is no serious invasion of privacy alleged. "The California Constitution and the common law set a high bar for an invasion of privacy claim." *See Low*, 900 F. Supp. 2d at 1025. Courts that have analyzed these issues have repeatedly held that similar data collection and disclosure practices to third parties constitute "routine commercial behavior" and are thus not a "highly offensive" or serious intrusion of privacy. *See id.* (LinkedIn's disclosure of users' browser history to third parties was not highly offensive); *In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d at 988 (Google's collection and disclosure of users' browsing histories was not highly offensive); *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1060, 1063 (disclosures of unique device identification number, personal data, and geolocation information without consent were not an egregious breach of social norms). Even disclosure of highly personal information such as social security numbers is not "highly offensive" under the relevant case law. *Low*, 900 F. Supp. 2d at 1025. This Court should similarly hold that Plaintiffs have not pled facts sufficient to establish a serious invasion of privacy, particularly because all they have alleged is that they visited Sharp's website and booked appointments. Compl. ¶¶ 10-13.

Separately, Plaintiffs are bringing a private claim for money damages only under the California Constitution. But money damages are not available for an alleged violation of article I, section 1 of the California Constitution. *See Clausing v. S.F. Unified Sch. Dist.*, 221 Cal. App. 3d 1224, 1238 (1990). Courts within the Ninth Circuit have agreed. *See Blanco v. Cnty. of Kings*, 142 F. Supp. 3d 986, 1000 (E.D. Cal. 2015) ("*Clausing* found that article I, section 1 does not permit a private right of



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

action for money damages and upheld the lower court's demurrer of a complaint that sought money damages for an alleged violation of the privacy provision in article I, section I . . ."); *Bates v. Arata*, No. C 05-3383 SI, 2008 WL 820578, at *4 (N.D. Cal. Mar. 26, 2008) (declining to recognize a private right of action for money damages based on article I, section 1's right to privacy under *Clausing*); *Allen v. Cnty. Of Sonoma*, No. 17-cv-00448-YGR, 2017 WL 3593340, at *5 (N.D. Cal. Aug. 18, 2017) (granting motion to dismiss California constitutional privacy claim for lack of damages remedy). Plaintiffs' constitutional privacy claim should therefore be dismissed on this additional ground.

**D. <u>Plaintiffs Fail to State a CMIA Claim (Count IV).</u>**

Plaintiffs allege Sharp has violated Section 56 *et seq*. of the CMIA. Section 56.10 states in pertinent part that "[n]o provider of health care … shall disclose *medical information* regarding a patient of the provider of health care … without first obtaining an authorization …" (emphasis added). Sections 56.06 and 56.101 concern maintenance and storage of "medical information" or "medical records." Cal. Civ. Code §§ 56.06, 56.101; *see also* Compl. ¶¶ 149-50. Plaintiffs' CMIA claim should be dismissed for at least two independent reasons.

***1. Plaintiffs Fail to Allege Facts Showing any Medical Information or Medical Records have been Transmitted.***

Plaintiffs' CMIA claim should be dismissed because they have failed to plead *facts* sufficient to show that any of their alleged medical information was actually transmitted to Meta. All they have alleged ***about themselves*** is that they visited Sharp's website and booked appointments. Compl. ¶¶ 10-13, *see also id*. at ¶¶ 64-67. Plaintiffs otherwise describe a scenario of a hypothetical plaintiff entering www.sharp.com and searching for a doctor, providing hypothetical examples of information that allegedly ***could*** be disclosed to Meta (*id.* ¶¶ 39-63). None of those allegations even concern Plaintiffs. They are not well-pleaded facts, but rather legal conclusions that are not entitled to the assumption of truth. *Iqbal*, 556 U.S. 678-79.

Most importantly, Plaintiffs do not plead what specific "medical information" they allegedly "disclosed," or what, if any, of the "disclosed medical information" was ever transmitted to Facebook. This is insufficient to state a claim under the CMIA. *See Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954-55 (N.D. Cal. 2017), aff'd, 745 F. App'x 8, 9 (9th Cir. 2018) (holding that disclosure to Facebook of browsing history on healthcare providers' public websites, as alleged here, did not disclose protected health information because "[t]hese pages contain general health information that is accessible to the public at large."). "Information available on publicly accessible websites stands in stark contrast to the personally identifiable patient records and medical histories protected by these statutes—information that unequivocally provides a window into an individual's personal medical history." *Id*. Plaintiffs notably fail to allege that the Pixel was installed on the secure patient portal.

In fact, the *Smith* court held that the type of information allegedly at issue here is *not* "medical information":

> The URLs at issue … point to pages containing information about treatment options for melanoma, information about a specific doctor, search results related to the phrase 'intestine transplant,' a wife's blog post about her husband's cancer diagnosis, and other publicly available medical information. … These pages contain general health information that is accessible to the public at large. The same pages are available to every computer, tablet, smartphone, or automated crawler that sends GET requests to these URLs. Nothing about the URLs, or the content of the pages located at those URLs, relates to the past, present, or future physical or mental health or condition of an individual.

262 F. Supp. 3d at 954–55 (dismissing CMIA claim). The Ninth Circuit affirmed the *Smith* court, similarly stating: "The data show only that Plaintiffs searched and viewed publicly available health information that cannot, in and of itself, reveal details of an individual's health status *or medical information*." *Smith v. Facebook, Inc.*, 745 Appx. at *9 (unpublished) (emphasis added); *see also Wilson v. Rater8, LLC*, No. 20-cv-1515-DMS, LL, 2021 WL 4865930, at *1, *5 (S.D. Cal. Oct. 18,

2021) (dismissing plaintiff's CMIA claim because the disclosure of "[p]laintiff's name, cellular telephone number, treating physician names, medical treatment appointment information, and medical treatment discharge dates and times" "is insufficient to allege disclosure of medical information under the CMIA.").

At most, Plaintiffs have alleged the disclosure of the fact that they *may* have been patients of a hospital affiliated with Sharp. But the "fact that he or she was a patient is not in itself medical information." *Eisenhower Med. Ctr. v. Super. Ct.*, 226 Cal. App. 4th 430, 436, (2014).

*Kurowski* is again instructive here: "[Plaintiff] fails to allege the disclosure of any information related to the provision of treatment to her or other similarly situated Rush patients." *Kurowski*, 2023 WL 2349606 at *6. "[Plaintiff] has not alleged sufficient facts, however, to support an inference that Rush disclosed its patients' individually identifiable health information, at least as that term is defined by the statute. . . . Moreover, the hypotheticals provided by Kurowski appear to illustrate only what occurs when an individual—whether a patient or not—clicks on certain areas of Rush's public website." *Id.* at *5. Plaintiffs' similarly insufficient allegations do not establish that any "medical information" was disclosed.

***2. Plaintiffs Fail to Allege Facts Showing that Anyone at Meta Actually Viewed any Medical Information.***

Separately, Plaintiffs have only alleged that the data at issue was channeled through Meta's coding or computer systems. *See, e.g.,* Compl. ¶¶ 19-69. This allegation is also insufficient to state a claim. *See, e.g.*, *Sutter Health*, 227 Cal. App. 4th at 1553 (no claim under CMIA when there was no allegation that anyone ever actually viewed medical information that was exposed in a data breach); *Regents of Univ. Cal. v. Super. Ct.*, 220 Cal. App. 4th 549, 570 (2013) (finding patient did not state a claim under the CMIA because "she cannot allege her medical records were, in fact, viewed by an unauthorized individual[,] because no one (except perhaps the



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

thief) knows what happened to the encrypted external hard drive and the password for the encrypted information.").

In *Sutter Health*, computers containing medical records were stolen but there was no evidence they were actually viewed. *Sutter Health,* 227 Cal. App. 4th at 1557. The California Court of Appeal explained that "[n]o breach of confidentiality takes place until an unauthorized person views the medical information. . . . [w]ithout an actual breach of confidentiality, the loss of possession is not actionable under section 56.101." *Id*.

In virtually identical circumstances as this case, a California trial court recently dismissed a CMIA claim on the ground that the plaintiffs had not pled facts showing that anyone had actually read any medical information:

> [T]he information may be collected, analyzed, and used by a third party for its own benefit, all through the use of computers, without any human actually laying eyes on it. Plaintiffs have not alleged that the information was "actually read" within the meaning of Sutter Health. Plaintiffs conclude that someone must have viewed the data at Facebook in order to compile the datasets for advertisers, the complaint does not specifically allege this. It does allege that the information was used by a third party and used for its own benefit, *i.e.*, for marketing purposes. However, in the absence of allegations that the information was "actually read," Plaintiffs have failed to allege facts sufficient to state a violation of the CMIA.

*Barbour v. John Muir Health*, No. C22-01692, 2023 WL 2618967, **7-8 (Cal. Super. Ct. Jan. 5, 2023).

Here, there similarly is no allegation that any *person* at Meta (or anywhere else) has ever actually viewed Plaintiff's data. Rather, the only allegation is that Plaintiffs received targeted advertising generated by Meta's computer systems, not an actual person. The CMIA claim should therefore be dismissed on this additional ground.

**E. Plaintiffs Fail to State a CIPA Claim (Count V).**

Cal. Pen. Code § 631 (also called CIPA) is California's anti-wiretapping and anti-eavesdropping statute. Section 631(a) imposes liability on any "person" who:

(1) "by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection . . . with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system"; or

(2) "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state"; or

(3) "attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained"; or

(4) "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above."

According to Plaintiffs, Sharp violates CIPA by "procuring Meta to automatically and secretly spy on, and intercept its' patients' sensitive health information . . .," and/or by "facilitating this wiretap . . ." *See* Compl. ¶¶ 157-58. As such, Plaintiffs allege only that Sharp has violated the fourth CIPA provision (CIPA § 631(a)(4)), essentially the "aiding and abetting" prong of the CIPA. Plaintiffs have not pled that Sharp directly intercepted or used the contents of any communication in transit. Indeed, all of the underlying allegations are directed against Meta; the sole factual allegation against Sharp is that it installed the Pixel on its website. *See generally* Compl.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

The CIPA claim fails because (a) Plaintiffs fail to plausibly allege facts under the California Penal Code sufficient to show that Sharp aided and abetted Meta's alleged interception of any communication; (b) Plaintiffs fail to allege facts showing that "contents" of communications are at issue; and (c) the Pixel does not intercept communications "in transit."

***1. Plaintiffs Fail to Plead Facts Sufficient to Show that Sharp Aided and Abetted Meta to Commit Wrongdoing.***

Should the Court find that Sharp can be held civilly liable for alleged aiding and abetting, Sharp's alleged liability under CIPA would be entirely derivative of an alleged interception by Meta of alleged communications that Plaintiffs claim were intended for Sharp in the first place. *See* Compl. ¶ 155. Therefore, their claim against Sharp turns on the fourth provision of CIPA where a person "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above." Cal. Pen. Code § 631(a)(4). Even if Meta had violated any provision of CIPA, Plaintiffs must still plausibly plead ***facts*** showing how Sharp actually aided and abetted any of Meta's alleged wrongdoing.

The CIPA lives in the California Penal Code (Cal. Penal Code § 631), the primary set of statutes that define criminal offenses and criminal procedures under state law. *See* Cal. Penal Code § 1. Within this framework, an aider and abettor of a crime is actually a "principal[] in any crime so committed." Cal. Penal Code § 31. As the California Supreme Court explained: "[P]roof of aider and abettor liability requires proof in three distinct areas: (a) the direct perpetrator's actus reus—a crime committed by the direct perpetrator, (b) the aider and abettor's mens rea—*knowledge of the direct perpetrator's unlawful intent and an intent to assist* in achieving those unlawful ends, and (c) the aider and abettor's actus reus—*conduct by the aider and abettor that in fact assists the achievement of the crime*." *People v. Perez*, 35 Cal. 4th



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1219, 1225 (2005) (emphasis added); *see also People v. Pacheco*, 76 Cal. App. 5th 118, 127 (2022) (citing same).

Although CIPA provides for a private (civil) right of action under Cal. Penal Code § 637.2(a), there is no statutory exception (or case law) suggesting that Section 31 as applied in criminal cases does not extend to civil cases brought under CIPA's private right of action, or that the legal standard for aiding and abetting should be loosened for such civil cases. After all, the CIPA lives entirely under the California Penal Code.

The California Supreme Court has clarified: "[A]n aider and abettor must have *criminal intent* in order to be convicted of a criminal offense." *People v. Beeman*, 35 Cal. 3d 547, 556 (1984). The California Supreme Court further explained: "[A]n aider and abettor's mental state must be *at least that required of the direct perpetrator*." *People v. McCoy*, 25 Cal. 4th 1111, 1118 (2001) (emphasis added); *see also People v. Vaughn*, 77 Cal. App. 5th 609, 625 (2022) (citing same). Moreover, aiding and abetting is a "specific intent" crime because it "refers to defendant's intent to do some future act or achieve some additional consequence." *People v. Laster*, 52 Cal. App. 4th 1450, 1468 (1997). For such crimes, "one may knowingly assist another to commit a crime, yet lack a specific intent that the crime be committed." *Id.* (citations omitted). "[A]n aider and abettor will 'share' the perpetrator's specific intent when he or she knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime." *In re Meagan R.*, 42 Cal. App. 4th 17, 22 (1996) (citing to *Beeman*, 35 Cal.3d at 560).

Finally, "[a]mong the factors which may be considered in making the determination of aiding and abetting are: presence at the scene of the crime, companionship, and conduct before and after the offense." *In re Lynette G.,* 54 Cal. App. 3d 1087, 1094 (1976). Here, Plaintiffs fail to plead ***facts*** sufficient to establish the key requirements of an aiding and abetting claim under the California Penal Code.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

More specifically, Plaintiffs have not pled facts showing that Sharp (a) had any knowledge of Meta's allegedly unlawful intent to intercept Plaintiffs' alleged communications; (b) harbored an intent to help Meta intercept any alleged communications; (c) had at least the same mental state as Meta; (d) knew the "full extent of [Meta's alleged] criminal purpose" and gave aid or encouragement with the intent or purpose of facilitating Meta's alleged commission of a crime; €(e) engaged in conduct that assisted the achievement of the alleged crime, taking into account factors like presence at the scene of the crime, companionship, and conduct before and after the offense.

Plaintiffs merely ***conclude*** that Sharp violated CIPA by "procuring Meta to automatically and secretly spy on, and intercept its' patients sensitive health information . . .," and/or by "facilitating this wiretap . . ." *See* Compl. ¶¶ 157-58. These are legal conclusions, not well-pleaded facts—accordingly, they should be disregarded under *Iqbal/Twombly*. Moreover, the Northern District has specifically held that similarly situated healthcare defendants "play[ed] no part in the exchange of data between Facebook and Plaintiffs." *Smith*, 262 F. Supp. 3d at 951.

***2. Plaintiffs do not Plead Facts Showing that "Content Information" was Disclosed to Meta.***

Plaintiffs try to blur the bright line between online browsing information and actual patient records or actual patient-doctor communications. To that end, Plaintiffs fail to allege facts showing that the substantive contents of their communications have ever been transmitted to Meta. Plaintiffs' reciting the legal conclusion that "medical information," "protected health information," "sensitive personal and health information," or "confidential medical information" are transmitted to Meta, without alleging any facts in support (*see, e.g.*, Compl. ¶¶ 11-13, 44, 67, 140, 150), is insufficient as a matter of law. For example, Plaintiffs provide several screenshots of data allegedly transmitted to Meta for hypothetical Sharp.com website users. *See*



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Compl. ¶¶ 40-43. But none of these are two-way communications between a patient and anyone at Sharp. Rather, these are primarily URL record information.

*In re Zynga Privacy Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014) is instructive. In *Zynga*, the court explained a URL could disclose that a person viewed the "page of a gay support group," yet held that such URLs "function[] like an 'address,'" not "contents" of a communication. *Id.* at 1107; *see also Facebook Internet Tracking Litig.,* 140 F. Supp. 3d at 935 (a URL sent to Facebook by a user's browser does not qualify as "contents" of a "communication" because it is nothing more than "record information regarding the characteristics of the message that is generated in the course of the communication.") (citation omitted). Accordingly, Plaintiffs' bareboned allegations regarding Sharp's public website do not constitute "content information" under the CIPA.

***3. Plaintiffs do not Plead Facts Showing that any Interception "In Transit" has Occurred.***

Plaintiffs do not—and cannot—plead facts showing that Meta intercepted any communication while it was "in transit," as required. The *Smith* court has already held that nearly identical allegations about technologies that caused browsing information to be sent from a user's browser to Meta did:

> …not establish that the Healthcare Defendants 'send' information to Facebook...More accurately, they embed code that creates a new connection between a visitor's browser and a Facebook server. The website's decision to embed the code allows that connection to occur, but the connection happens independently...

262 F. Supp. 3d at 951. In other words, rather than an interception, two separate communications occur—one between the hospital website and the user's browser, and one between the user's browser and Facebook. No communication is being intercepted in transit. *Id.*

Plaintiffs are again expected to rely heavily on *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 608. *Facebook Internet Tracking,* however, was limited





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

to the narrow issue of whether Facebook was a party under the "party exception" rule to CIPA and "d[id] not opine on whether the Plaintiffs adequately pleaded the other requisite elements of the statutes," such as the in transit requirement, "as those issues are not presented on appeal." *Id.* at 608. It even involved a different technology: "plug-ins," not pixels, that collected sensitive information even while the plaintiff was logged off and not using Facebook's services. *Id.* at 608 & n.9.

The Court should follow *Smith* because it is a published, directly-on-point decision. Sharp is not aware of any other published decision that is directly-on-point.

## V. CONCLUSION

Because amendment would be futile, Sharp respectfully asks the Court to grant its motion to dismiss the Consolidated Complaint with prejudice.

Dated: April 3, 2023

**BAKER & HOSTETLER LLP**

By: */s/Teresa C. Chow*
TERESA C. CHOW

*Attorneys for Defendant*
SHARP HEALTHCARE

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES