TODD D. CARPENTER (SBN 234464)
todd@lcllp.com
**LYNCH CARPENTER LLP**
1350 Columbia Street, Suite 603
San Diego, CA 92101
Tel: (619) 762-1910

ALEXANDER E. WOLF (SBN 299775)
awolf@milberg.com
JOHN J. NELSON (SBN 317598)
jnelson@milberg.com
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
280 South Beverly Drive, Penthouse
Beverly Hills, California 90212
Tel: (872) 365-7060

JASON S. HARTLEY (SBN 192514)
hartley@hartleyllp.com
**HARTLEY LLP**
101 W. Broadway, Ste 820
San Diego, CA 92101
Tel: (619) 757-3472

TINA WOLFSON (SBN 174806)
twolfson@ahdootwolfson.com
CHRISTOPHER STINER (SBN 276033)
cstiner@ahdootwolfson.com
DEBORAH DE VILLA (SBN 312564)
ddevilla@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505
Tel.: (310) 474-9111
Fax: (310) 474-8585

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANNAH COUSIN, LINDA CAMUS, DEANNA FRANKLIN-PITTMAN, and EDWARD BARBAT individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SHARP HEALTHCARE, <br><br> Defendant. | Case No. 3:22-cv-02040-MMA-DDL <br><br> **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS** <br><br> Date:  TBD <br> Time:  TBD <br> Location: Ctrm 3C <br> Judge:  Hon. Michael M. Anello <br><br> Filed:  11/22/2022 <br> Consol. Action Filed: 3/03/2023 |

1

# **TABLE OF CONTENTS**

2
                                                                        **Page**

3  I.   INTRODUCTION ............................................................................... 1

4  II.  FACTUAL BACKGROUND.............................................................. 2

5       A.   Meta Pixel.............................................................................. 2

6       B.   Sharp's Use of Meta Pixel...................................................... 3

7  III. ARGUMENT..................................................................................... 4

8       A.   Plaintiffs Adequately Plead Breach of Fiduciary Duty........... 4

9       B.   Plaintiffs State Claims for Invasion of Privacy Under California's
            Common Law and Constitution ................................................ 8

10
11           1.   Pleading Requirements for Tort and Constitutional Privacy
                  Claims ........................................................................... 8

12           2.   Plaintiffs Plausibly Allege Sharp's Highly Offensive Intrusion
                  on Their Privacy............................................................ 9

13
14                a.   Plaintiffs adequately allege that Sharp intruded on their
                       seclusion ................................................................ 9

15
16                b.   Plaintiffs also sufficiently allege that Sharp's invasion
                       of their privacy was highly offensive ................................. 12

17           3.   The California Constitution Affords Plaintiffs a Private Right
                  of Action to Seek Damages from Sharp ....................... 13

18       C.   Plaintiffs State a Claim for Violation of CIPA ..................... 14

19           1.   Sharp is Liable for Enabling Meta's Conduct ............. 14

20           2.   Plaintiffs Adequately Allege that "Content Information" Was
                  Disclosed to Meta.......................................................... 17

21
22           3.   Plaintiffs Plausibly Allege an Interception Occurred ................. 19

23       D.   Plaintiffs State a Claim for Violation of CMIA ..................... 21

24           1.   Plaintiffs Plausibly Allege Medical Information Was Disclosed 21

25           2.   Plaintiffs Plausibly Allege Meta Viewed Medical Information .. 24

26  IV.  ANY DISMISSAL SHOULD BE WITH LEAVE TO AMEND ................... 25

27  V.   CONCLUSION................................................................................. 25

28

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS
CASE NO. 3:22-CV-02040-MMA-DDL

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Belozerov v. Gannett Co.*,
No. CV 22-10838-NMG, 2022 WL 17832185 (D. Mass. Dec. 20, 2022) ..............23

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ............................................................13, 21

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ...................................................................13

*Castillo v. Seagate Tech., LLC*,
No. 16-cv-01958-RS, 2016 WL 9280242 (N.D. Cal. Sept. 14, 2016) ......................7

*Corona v. Sony Pictures Entm't, Inc.*,
No. 14-CV-09600 RGK, 2015 WL 3916744 (C.D. Cal. June 15, 2015) ..................7

*DeSoto v. Yellow Freight Sys.*,
957 F.2d 655 (9th Cir. 1992) ..................................................................................25

*Heldt v. Guardian Life Ins. Co. of Am.*,
No. 16-cv-00885-BAS-NLS, 2017 WL 5194600 (S.D. Cal. Nov. 9, 2017) .............7

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ...........................................................................passim

*In re Google Cookie Placement Consumer Privacy Litig.*,
806 F.3d 125 (3d. Cir. 2015).................................................................13, 17, 18

*In re Google Location History Litig.*,
514 F. Supp. 3d 1147 (N.D. Cal. 2021) ..................................................................13

*In re Google RTB Consumer Privacy Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022).............................................................12, 17

*In re Hulu Priv. Litig.*,
2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ........................................................23

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
603 F. Supp. 3d 1183 (S.D. Fla. 2022) ...................................................................24

*In re Meta Pixel Healthcare Litig.*,
No. 22-cv-03580-WHO, 2022 WL 17869218 (N.D. Cal. Dec. 22, 2022) ....17, 18, 19, 20

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
613 F. Supp. 3d 1284 (S.D. Cal. 2020).....................................................................24

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ..................................................................................17

ii

1

## <u>TABLE OF AUTHORITIES (cont.)</u>

2

**Page(s)**

3

**Federal Cases (cont.)**

4

*In re: Lenovo Adware Litig.*,
  No. 15-MD-02624-RMW, 2016 WL 6277245 (N.D. Cal. Oct. 27, 2016)...............16

5

*Kurowski v. Rush System for Health*,
  No. 22 C 5380, 2023 WL 2349606 (N.D. Ill. Mar. 2, 2023)..............................10, 11

6

*Matera v. Google Inc.*,
  No 15-CV-04062-LHK, 2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ................15

7

8

*Michael Katz-Lacabe v. Oracle America Inc.*,
  No. 22–cv–04792–RS, 2023 WL 2838118 (N.D. Cal. Apr. 6, 2023) ....11, 12, 13, 19

9

*Miller v. California Dep't of Corr.*,
  No. 16-cv-02431-EMC, 2016 WL 3418522 (N.D. Cal. June 22, 2016) ...................5

10

*Noel v. Hall*,
  568 F.3d 743 (9th Cir. 2009) ...................................................................................19

11

12

*Purvis v. Aveanna Healthcare, LLC*,
  No. 1:20-CV-02277-LMM, 2021 U.S. Dist. LEXIS 218300 (N.D. Ga. Sep. 27, 2021)  5, 6

13

14

*Opris v. Sincera Reprod. Med.*,
  No. 21-3072, 2022 WL 1639417 (E.D. Pa. May 24, 2022) .......................................5

15

*Raines v. U.S. Healthworks Med. Grp.*,
  2021 WL 5763831 (S.D. Cal. Jan. 25, 2021)..........................................................11

16

17

*Resnick v. AvMed, Inc.*,
  693 F.3d 1317 (11th Cir. 2012) .................................................................................5

18

*Revitch v. New Moosejaw, LLC*,
  No. 18-CV-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ........15, 20, 21

19

20

*Rodriguez v. Google LLC*,
  No. 20-cv-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021) .....................13

21

*Saleh v. Nike, Inc.*,
  562 F. Supp. 3d 503 (C.D. Cal. 2021) ................................................................15, 18

22

23

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
  806 F.2d 1393 (9th Cir. 1986) .................................................................................25

24

*Smith v. Facebook, Inc.*,
  262 F. Supp. 3d 943 (N.D. Cal. 2017) ............................................................21, 22, 23

25

26

*Soo Park v. Thompson*,
  851 F.3d 910 (9th Cir. 2017) ...................................................................................25

27

28

iii

1

## <u>TABLE OF AUTHORITIES (cont.)</u>

2
**Page(s)**

3
**Federal Cases (cont.)**

4

5
*Stasi v. Inmediata Health Group Corp.*,
   501 F.Supp.3d 898 (S.D. Cal. 2020)..................................................6, 7, 24

6
*Steinberg v. CVS Caremark Corp.*,
   899 F. Supp. 2d 331 (E.D. Pa. 2012) ...........................................10, 11

7

8
*Tamraz v. Bakotic Pathology Assocs., LLC*,
   2022 WL 16985001 (S.D. Cal. Nov. 16, 2022).............................23, 24

9
*Wilson v. Rater8, LLC*,
   No. 20-CV-1515-DMS-LL, 2021 WL 4865930 (S.D. Cal. Oct. 18, 2021) ............21

10
**State Cases**

11

12
*Am. Acad. of Pediatrics v. Lungren*,
   16 Cal.4th 307, 66 Cal.Rptr.2d 210, 940 P.2d 797 (1997) .......................13

13
*Board of Medical Quality Assurance v. Gherardini*,
   93 Cal.App.3d 669, 156 Cal.Rptr. 55 (1979)................................12

14

15
*Colleen M. v. Fertility & Surgical Assocs. of Thousand Oaks*,
   132 Cal. App. 4th 1466 (2005) ................................................22

16
*Eisenhower Med. Ctr. v. Sup. Ct.*,
   226 Cal. App. 4th 430 (2014)................................................22

17

18
*Flanagan v. Flanagan*,
   27 Cal. 4th 766 (2002) ......................................................15

19
*Gruber v. Yelp Inc.*,
   55 Cal. App. 5th 591 (2020) ................................................15

20

21
*Hahn v. Miranda*,
   147 Cal. App. 4th 740 (Cal. Ct. App. 2007)................................5

22
*Heller v. Norcal Mut. Ins. Co.*,
   8 Cal.4th 30 (1994) .........................................................7

23

24
*Hernandez v. Hillsides, Inc.*,
   47 Cal. 4th 272 (2009) ................................................8, 9, 12

25
*Hill v. Nat'l Collegiate Athletic Assn.*,
   7 Cal. 4th 1, 26 Cal.Rptr.2d 834, 865 P.2d 633 (1994) .......................8, 12

26

27
*Julian v. Mission Cmty Hosp.*,
   11 Cal.App.5th 360, 218 Cal.Rptr.3d 38 (2017) ...........................14

28
*Katzberg v. Regents of Univ. of Cal.*,
   127 Cal.Rptr.2d 482, 58 P.3d 339 (2002)................................14

iv

## <u>TABLE OF AUTHORITIES (cont.)</u>

**Page(s)**

**State Cases (cont.)**

*Kearney v. Salomon Smith Barney, Inc.*,
  39 Cal. 4th 95 (2006) ................................................................................................16

*Lovgren v. Citizens First Nat. Bank of Princeton*,
  126 Ill. 2d 411, 534 N.E.2d 987 (1989) ......................................................................11

*Moore v. Regents*,
  51 Cal.3d 120 (1990) ....................................................................................................6

*People v. Campbell*,
  25 Cal. App. 4th 402 (1994) ..................................................................................15, 16

*People v. Cooper*,
  53 Cal. 3d 1158 (1991) ................................................................................................16

*Pioneer Electronics (USA), Inc. v. Superior Court*,
  40 Cal.4th 360, 150 P.3d 198, 53 Cal.Rptr.3d 513 (2007) ..........................................8

*Regents of Univ. of California v. Superior Ct.*,
  220 Cal. App. 4th 549, 163 Cal. Rptr. 3d 205 (2013) ..................................................7

*Ruiz v. Podolsky*,
  50 Cal.4th 838 (2010) ...................................................................................................5

*Sutter Health v. Super Ct.*,
  227 Cal. App. 4th 1546 (2014) ......................................................................................7

*State Dep't of State Hosps. v. Super. Ct.*,
  61 Cal. 4th 339, 188 Cal.Rptr.3d 309, 349 P.3d 1013 (2015) ...................................14

*White v. Davis*,
  13 Cal.3d 757, 120 Cal.Rptr. 94, 533 P.2d 222 (1975) .............................................13

**Federal Statutes**

42 U.S.C. §§ 1302d .............................................................................................................2

**State Statutes**

Cal. Civ. Code § 56 .............................................................................................................2

Cal. Civ. Code § 56.05(i) ...................................................................................................21

Cal. Civ. Code § 56.10(a) ..................................................................................................21

Cal. Gov. Code §§ 810–996.6 ...........................................................................................14

Cal. Gov. Code § 815.6 ......................................................................................................14

1

## TABLE OF AUTHORITIES (cont.)

2
**Page(s)**

3
**State Statutes (cont.)**

4
Cal Penal Code § 630 ................................................................................................2

5
Cal. Penal Code § 631(a) ..............................................................................14, 15, 16

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.   INTRODUCTION

Plaintiffs Hannah Cousin, Linda Camus, Deanna Franklin-Pittman, and Edward Barbat ("Plaintiffs") filed a Consolidated Class Action Complaint (ECF No. 14) ("CAC") against Sharp Healthcare ("Sharp" or "Defendant") challenging its blatant disregard for its patients' information, including, *inter alia*, sensitive health information and details regarding medical conditions, prescriptions, and doctors' appointments. Using Meta Pixel, a hidden tracking tool Sharp embedded on its website and patient scheduling page, Sharp intentionally enabled Meta Platforms, Inc. ("Meta") to surreptitiously intercept Plaintiffs' and other patients' electronic communications, including sensitive health information, with their healthcare provider, Sharp.

In June 2022, an investigation by The Markup revealed that hospitals around the country, including Sharp, were flouting the privacy rights of their patients by embedding Meta Pixel on their websites and appointment scheduling pages, which in turn "sen[t] [Meta] a packet of data whenever a person clicked a button to schedule a doctor's appointment."[1] After The Markup contacted Sharp about its use of Meta Pixel, Sharp's Vice President for Public Relations and Communications, John Cihomsky, responded "[a]fter reviewing your questions and looking into the matter, Sharp HealthCare has confirmed that we are not sending any personal identifiable information, including IP addresses, to Facebook [now  Meta]."[2] But Meta Pixel does not require Sharp or any other hospital to actually "send" any information. Rather, it works by intercepting the information in real time from the patient's browser directly to Meta, done at Sharp's direction.

Plaintiffs allege that Sharp intentionally disclosed patients' sensitive health information with Meta, without its patients' consent, through Defendant's procurement and embedding of Meta Pixel on its website, including on the appointment scheduling

---

[1] https://themarkup.org/pixel-hunt/2022/06/16/facebook-is-receiving-sensitive-medical-information-from-hospital-websites

[2] https://www.documentcloud.org/documents/22060617-combined-hospital-comments?responsive=1&title=1

page. The information disclosed to, and harvested by, Meta can then be aggregated across all websites that contain Meta Pixel, which allows Meta to create a detailed profile of each person it collects information on for advertising purposes. As alleged in the CAC, Sharp's conduct demonstrates reckless disregard for the privacy rights of its patients. Plaintiffs bring this action on behalf of all natural persons in California who used the Sharp scheduling page and whose personal information was intercepted by Meta Pixel. Plaintiffs bring causes of action for breach of fiduciary duty; the common law tort of invasion of privacy–intrusion upon seclusion; invasion of privacy under the California Constitution; and violations of the California Confidentiality of Medical Information Act, Cal Civil Code §§ 56 *et seq.* ("CMIA") and the Section 631(a) of the California Invasion of Privacy Act, Cal Penal Code §§ 630, *et seq*. ("CIPA").

Moreover, Sharp failed to inform or otherwise gain consent from its patients to disclose their sensitive health information. As a medical provider governed by the Health Insurance Portability and Accountability Act, 42 U.S.C. §§ 1302d, *et seq.* ("HIPAA"), Sharp was not authorized to share Plaintiffs' sensitive health information with Meta in the first place. Had Plaintiffs known that Sharp was sharing this information to Meta, they would never have entrusted it to Sharp.

At the pleading stage, Plaintiffs are not required to prove the elements of each claim. Rather, Plaintiffs must simply plead facts sufficient to state a claim for relief that is *plausible* on its face. Plaintiffs have done so. The Court should deny Sharp's Motion to Dismiss in its entirety.

## II.   FACTUAL BACKGROUND

### A.   Meta Pixel

Meta Pixel was introduced in 2015 by Meta to refine targeted advertising. CAC ¶ 19. Meta Pixel is a 1x1 tracking pixel that is seamlessly embedded on third-party websites and collects granular data for every interaction on a webpage in real time as those interactions occur. *Id*. ¶¶ 4, 20, 22, 80. This data can include each person's Facebook ID (which allows Meta to identify the user's Facebook profile); the user's

2

identity; IP addresses; information about the user's web browser; page location, document, and referrer; any buttons clicked; the labels of those buttons and any pages visited as a result of the button click; form field text entries; and other event information performed by a website user. *Id*. ¶ 24. Through a process called Advanced Matching, Meta can use the information harvested by Meta Pixel to connect that information to a specific person's Facebook and/or Instagram profile. *Id*. ¶ 28. Even if that person does not have a Facebook or Instagram account, Meta will create a "shadow profile" with each person's harvested data. *Id*. ¶ 29. Meta gathers a vast amount of information as more than six million websites currently use Meta Pixel. *Id*. ¶ 27.

### B.   Sharp's Use of Meta Pixel

Sharp is San Diego's leading health care provider, operating its flagship location—Sharp Memorial Hospital—and numerous other healthcare locations. *Id*. ¶ 14. Despite being a trusted provider of healthcare services and an entity covered under HIPAA, Sharp made the intentional choice to embed Meta Pixel on its website and appointment scheduling page. *Id*. ¶¶ 2, 67, 74. Through Sharp's appointment scheduling page, patients can schedule an appointment online for one of its locations, and in doing so, submit medical and personal information such as the reason for their visit, along with their name, email, phone number, address, and social security number. *Id*. ¶ 65. Additionally, Sharp's website enables patients to search for doctors, while providing them with the ability to filter their options, such as by a doctor's gender, spoken languages, or specialty. *Id*. ¶ 42.

Because Meta Pixel is embedded on Sharp's website and appointment scheduling page, when a patient schedules an appointment, or attempts to, that information is sent to Meta. *Id*. ¶¶ 52-53. Likewise, if a patient uses the search bar to obtain information pertaining to a medical condition or treatment option, such as AIDS, that information is instantaneously sent to Meta. *Id*. ¶¶ 62-63. Using the patient's unique Facebook ID (c_user ID) generated by Meta Pixel, Meta can then correlate and combine the information obtained through Sharp's webpage, with the information obtained across all

other webpages visited by the same patient, to create the account profile and link it to Facebook and/or Instagram or create a "shadow account." *Id*. ¶¶ 28-29, 58.

Importantly, Sharp's secret disclosure, and Meta's surreptitious harvesting, of patients' sensitive medical information is done without their consent. *Id*. ¶ 80. As a HIPAA-covered entity, Sharp can only share patients' medical information with third parties if it obtains express consent from its patients, or enters into a HIPAA-approved contract with Meta. *Id*. ¶¶ 70–79. Sharp did neither. *Id*. ¶¶ 88–89. Instead, Sharp knowingly loaded Meta Pixel on its website and appointment scheduling page, well-aware that Meta Pixel was harvesting its patients' sensitive medical information.

As alleged in the CAC, Sharp's procurement and embedding of Meta Pixel on its webpage is unlawful, violates HIPAA, and is highly offensive to a reasonable person.[3] *Id*. ¶¶ 9, 133. Sharp is required to, and does, have a Notice of Privacy Practices that informs patients that it is "responsible for safeguarding [patients'] protected health information" and that "information about [patients] and [patients'] health is confidential." *Id*. ¶ 7. Relying on those privacy practices, Plaintiffs provided their sensitive health information to Sharp to obtain treatment or seek medical attention or consultations. In a highly offensive invasion of its patients' privacy, Sharp facilitated and allowed the disclosure of their personal health information to third parties without patients' knowledge.

## III.   ARGUMENT

### A.   Plaintiffs Adequately Plead Breach of Fiduciary Duty

Sharp moves to dismiss Plaintiffs' claim for breach of fiduciary duty arguing "there is no common law duty of confidentiality in California concerning the protection of medical information." Mot. at 8. Sharp is wrong. California law recognizes that "the doctor-patient relationship is a fiduciary one" and imposes a fiduciary relationship upon

---

[3] As noted by the Hon. William H. Orrick in a case pending against Facebook's parent company concerning the use of pixel tracking on hospital websites, consumers "would be shocked" to learn of the scope and nature of the information collected. *See Doe v. Meta Platforms, Inc.*, No. 3:22-cv-03580-WHO (N.D. Cal.) ECF No. 141.

healthcare providers with respect to their patients, as well as a duty to safeguard personal and medical information consistent with medical privacy statutes and industry standards. *Miller v. California Dep't of Corr.*, No. 16-cv-02431-EMC, 2016 WL 3418522, at *5 (N.D. Cal. June 22, 2016) (citing *Hahn v. Miranda*, 147 Cal. App. 4th 740, 748 (Cal. Ct. App. 2007)).

Due to the private and confidential nature of the doctor-patient relationship, "there are substantial privacy concerns" associated with "potentially authorizing an intrusion into a patient's confidential relationship with a physician," which includes "the disclosure of confidential medical information regarding the *condition a patient seeks to treat*." *Ruiz v. Podolsky*, 50 Cal.4th 838, 850-51 (2010) (internal quotations omitted) (emphasis added). Sharp cites no authority supporting a departure from this commonsense precedent. Here, Plaintiffs and Class members used Sharp's website to search for medical providers, book appointments, and otherwise seek treatment, and they allege that they entrusted Sharp, a medical provider, with their highly sensitive medical information during that process. CAC ¶¶ 10-13, 51, 64-66. Sharp, as a healthcare provider and, thus, a fiduciary to Plaintiffs and Class members, had a duty to maintain the confidential nature of their sensitive PII/PHI. *Id.* ¶¶ 7-9, 77, 120.

Other courts have denied motions to dismiss when plaintiffs have alleged a fiduciary relationship between healthcare providers and themselves in the data disclosure context. *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321 (11th Cir. 2012) (holding in data disclosure case that breach of fiduciary duty claim could proceed past defendant healthcare provider's motion to dismiss); *Opris v. Sincera Reprod. Med.*, No. 21-3072, 2022 WL 1639417, at *11 (E.D. Pa. May 24, 2022) (finding that a reproductive medicine clinic "has a fiduciary relationship with its patients" sufficient to sustain a breach of fiduciary duty claim at the pleading stage of a data breach case); *Purvis v. Aveanna Healthcare, LLC*, No. 1:20-CV-02277-LMM, 2021 U.S. Dist. LEXIS 218300, at *48 (N.D. Ga. Sep. 27, 2021) (declining to grant defendant hospital's motion to dismiss breach of fiduciary duty claim in data disclosure case). The court in *Purvis* noted the

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS
CASE NO. 3:22-CV-02040-MMA-DDL

difference between the healthcare provider/patient relationship and "standard consumer transactions" by observing that the transmission of PII/PHI to the healthcare provider "was akin to the health information that would be communicated to a physician when receiving medical care." 2021 U.S. Dist. LEXIS 218300, at *47–48. The same reasoning applies here. On the basis of the doctor-patient relationship alone, Sharp's motion to dismiss the breach of fiduciary duty claim should be denied.

Sharp fails to acknowledge the physician-patient relationship altogether. Instead, Sharp argues that "the California Supreme Court has expressly held that a hospital does not owe a fiduciary duty to patients." Mot. at 13 (citing *Moore v. Regents*, 51 Cal.3d 120, 133 (1990)). *Moore* was an informed consent case that has no application to the facts before this Court. *See id*. at 129. Accordingly, the *Moore* court expressly held that while a treating physician has a fiduciary duty to obtain informed consent from a patient, a hospital defendant did not "ha[ve] the duty to obtain [the plaintiff's] informed consent to medical procedures." *Id*. at 133. Applying *Moore* as a blanket proclamation that a hospital never owes a fiduciary duty to patients, as Sharp seeks to have the Court do here, is an improper and overbroad application of that case. This is especially so because Plaintiffs allege that Sharp intentionally shared with Meta confidential PII/PHI obtained from unwitting patients who were in the process of procuring healthcare services, which it accomplished by using the embedded Meta Pixel. CAC ¶¶ 2-9, 67, 69, 80, 88.

Even in the absence of the doctor-patient relationship established between Plaintiffs and Sharp, "the statutory protection afforded to medical information is rooted in common law duties traditionally serving the basis for lawsuits, including the duty not to publicly disclose private facts." *Stasi v. Inmediata Health Group Corp.*, 501 F.Supp.3d 898, 914 (S.D. Cal. 2020). Plaintiffs allege that Sharp owed them a duty to safeguard personal and medical information entrusted to it for the purpose of obtaining medical services consistent with medical privacy statutes and industry standards. CAC ¶¶ 7, 67, 121, 122. District courts have found comparable allegations sufficient to establish that a "special relationship exists between a company that possesses peoples'

personal and medical information and those people." *Stassi*, 501 F. Supp. 3d at 914; *see also Heller v. Norcal Mut. Ins. Co.*, 8 Cal.4th 30, 63-64 (1994) (same); *Heldt v. Guardian Life Ins. Co. of Am.*, No. 16-cv-00885-BAS-NLS, 2017 WL 5194600, at *4 (S.D. Cal. Nov. 9, 2017) (finding that a fertility clinic owes "a duty of reasonable care to safeguard Plaintiff's private medical information."); *Castillo v. Seagate Tech., LLC*, No. 16-cv-01958-RS, 2016 WL 9280242, at *2 (N.D. Cal. Sept. 14, 2016) (alleging employer had duty to reasonably protect employees' information); *Corona v. Sony Pictures Entm't, Inc.*, No. 14-CV-09600 RGK, 2015 WL 3916744, at *3 (C.D. Cal. June 15, 2015) (alleging employer owed employees a duty to implement and maintain adequate security measures to safeguard their personal information).

Moreover, by virtue of Section 56.101 of the CMIA and Section 164.105 of HIPPA, healthcare providers are charged with the duty not only to refrain from unauthorized disclosures of medical information but also to maintain such information in a manner that preserves the confidentiality of the information in the healthcare provider's possession, custody, and control. *See, e.g.*, *Regents of Univ. of California v. Superior Ct.*, 220 Cal. App. 4th 549, 566, 163 Cal. Rptr. 3d 205, 218 (2013), *as modified on denial of reh'g* (Nov. 13, 2013); *see also* CAC ¶¶ 76-77. Based on these statutorily implemented industry standards, Plaintiffs allege that Sharp breached its fiduciary duty to safeguard the confidential nature of Plaintiffs' and Class members' sensitive PII/PHI. CAC ¶¶ 3-6, 8, 32, 39-45, 51-57, 67, 69, 87, 123.[4] Plaintiffs' allegations are sufficient at the pleading stage to state a claim for breach of fiduciary duty. Sharp's motion to dismiss the breach of fiduciary duty claim should be denied.

---

[4] Sharp argues that *Sutter Health v. Super Ct.*, 227 Cal. App. 4th 1546, 1557 (2014) requires a third-party to have "actually viewed" Plaintiffs' sensitive PII/PHI to state a claim for breach of fiduciary duty. Mot. at 15. Not so. The *Sutter Health* holding relied upon by Sharp related to a claim brought under Section 56.101 of the CMIA. *Id.* at 1556-58. *Sutter Health* is not dispositive of the issue here.

**B.** **Plaintiffs State Claims for Invasion of Privacy Under California's Common Law and Constitution**

    **1.** **Pleading Requirements for Tort and Constitutional Privacy Claims**

Plaintiffs plead two cognizable causes of action for invasion of privacy. The first, intrusion on seclusion at common law, requires Plaintiffs to allege facts showing that (1) Sharp "intentionally intrude[d] into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy"; and (2) the intrusion "occur[red] in a manner highly offensive to a reasonable person." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009). The second, violation of the right to privacy provided by Article I, section 1 of the California Constitution,[5] requires Plaintiffs to allege (1) "a legally protected privacy interest"; (2) a reasonable expectation of privacy; and (3) an intrusion "constitut[ing] an egregious breach of the social norms" that is "highly offensive." *Id.* at 287.

Given the similarity of these legal theories, "courts consider the claims together when both are invoked and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020), *cert. denied sub nom. Facebook, Inc. v. Davis*, — U.S. —, 141 S. Ct. 1684 (U.S. Mar. 22, 2021) ("*Facebook Tracking*"). Both branches of this inquiry are mixed questions of law and fact. *Pioneer Electronics (USA), Inc. v. Superior Court*, 40 Cal.4th 360, 370, 150 P.3d 198, 53 Cal.Rptr.3d 513 (2007) (citing *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 26, 40, 26 Cal.Rptr.2d 834, 865 P.2d 633 (1994). Only if the allegations "show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law." *Id.* at 370 (citing *Hill*, 7 Cal.4th at 40, 26 Cal.Rptr.2d 834, 865 P.2d 633).

---

[5] This section of California's constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and *privacy*." Cal. Const. art. I, §1 (emphasis added).

### 2. Plaintiffs Plausibly Allege Sharp's Highly Offensive Intrusion on Their Privacy

Sharp does not challenge the sufficiency of Plaintiffs' allegations that they had a reasonable expectation of privacy in the information they submitted to its website. Therefore, the first prong of the combined privacy inquiry is satisfied. Sharp instead directs two arguments at the second prong: Sharp denies intruding on Plaintiffs' seclusion at all because it only sent Meta information that patients voluntarily provided and, alternatively, argues that any intrusion it made was not sufficiently offensive. Both arguments fail.

### a. Plaintiffs adequately allege that Sharp intruded on their seclusion

The essence of an intrusion claim is "unwanted access to data by electronic or other covert means, in violation of the law or social norms." *Hernandez*, 47 Cal. 4th at 286, 97 Cal.Rptr.3d 274, 211 P.3d 1063). Plaintiffs allege this precise intrusion. Meta accessed their information by electronic means without their consent and, crucially, Sharp covertly provided that access to Meta by concealing Meta Pixel on its website.

Contrary to these allegations, Sharp contends that "the actual alleged intrusion upon patients' seclusion, if any, is carried out by a third party, not Sharp." Mot. at 15–16. The argument that only Meta "carried out" the alleged intrusion is simply an attempt to deflect attention from Sharp's unauthorized diversion of patient information via surreptitiously deployed source code, which Plaintiffs allege. CAC ¶¶ 5, 8, 67, 157. That conduct, irrespective of what Meta subsequently did with the information Sharp gave it, intruded on Plaintiffs' privacy by secretly siphoning their data to a third party unbeknownst to Plaintiffs. *Id.* As much as Sharp would like to distance itself from this incursion and foist all liability on its data-mining ally, Meta, without Sharp's voluntary adulteration of its website to create and maintain a constant flow of information delivery to Meta, would otherwise not have access to Plaintiffs' confidential PII/PHI.

Relying on decisions outside the Ninth Circuit applying foreign law, Sharp fails to defend its actions by drawing what it claims to be a legally significant distinction between *obtaining* private data, which can amount to actionable intrusion, and *disclosing* the same data, which it says cannot. *See* Mot. at 15 (citing *Steinberg v. CVS Caremark Corp.*, 899 F. Supp. 2d 331 (E.D. Pa. 2012); *Kurowski v. Rush System for Health*, No. 22 C 5380, 2023 WL 2349606 (N.D. Ill. Mar. 2, 2023)). While convenient for Sharp, this distinction is illusory given the facts Plaintiffs allege. They allege Sharp both obtained *and* disclosed their patient data in violation of their reasonable expectation of privacy—by baking source code into its website. These two actions are inseparable components of the privacy intrusion alleged by Plaintiffs. That Plaintiffs voluntarily provided their information to Sharp does not alter the conclusion because they only did so under the false pretense that their information would remain confidential.

The Ninth Circuit's decision in *Facebook Tracking* recognized this form of intrusion, disposing of Sharp's argument. There, Meta (then Facebook), like Sharp, embedded third-party code to capture its users' personally identifiable browsing histories, including search terms, URLs, and IP addresses. Users permitted Facebook to obtain this data while they were logged onto their accounts and to sell it to third parties. But Facebook, like Sharp, exceeded the authorization its users granted. Facebook also tracked users' information when they were not logged in, without disclosing that practice. The court framed the privacy issue as "whether a user would reasonably expect that Facebook would have access to the user's individual data after the user logged out of the application." *Facebook Tracking*, 956 F. 3d at 602. The court answered no, *id*. at 605–606, and denied Facebook's motion to dismiss. *Id*. at 606.

Plaintiffs' allegations present a far more egregious invasion of privacy than alleged in *Facebook Tracking*. The users in *Facebook Tracking* knowingly allowed use of source code to track online activity provided to third parties, just not when they were logged off. Here, Plaintiffs never authorized *any* tracking of their healthcare data, which is inherently more private than social media surfing. Of particular relevance, the court

in *Facebook Tracking* did not even consider distinguishing between *obtaining* user information—the intrusion it found—and *disclosing* it to third parties. Facebook's sale (disclosure) of user data to third parties was part and parcel of the intrusion.[6]

Sharp points to no decisions within the Ninth Circuit, or any others applying California law, as authority for its position.[7] It relies primarily on a slip opinion from the Northern District of Illinois in *Kurowski*, which applied Illinois privacy law to find that "the core of [intrusion into seclusion] is the offensive prying into the private domain of another," not "publication" of information. 2023 WL 2349606, at *9 (N.D. Ill. March 2, 2023) (quoting *Lovgren v. Citizens First Nat. Bank of Princeton*, 126 Ill. 2d 411, 417, 534 N.E.2d 987, 989 (1989)). Posing the same dubious dichotomy urged by Sharp, the *Kurowski* court concluded that Rush did not "pry" into the patients' private domain to obtain their information, but only passed it on. *Id.* at *9. This analysis is flawed because Rush, like Sharp, *did* pry—not for itself, because patients consented to its access, but on behalf of a third party Rush (and Sharp's) patients knew nothing about.[8]

---

[6] *Facebook Tracking* also rejected the argument, echoed by Sharp here, that successfully pleading an intrusion claim requires a plaintiff to specify the sensitive information collected, and that a general allegation of acquiring a large volume of individualized data is insufficient. The court found allegations that Facebook acquired sensitive browsing histories used to construct personalized user profiles sufficient to plead a reasonable expectation of privacy. *Facebook Tracking*, 956 F. 3d at 604. Plaintiffs allege the same here. *See, e.g.,* CAC ¶ 5 (alleging patient information aggregated to compile personalized dossiers). *See also Michael Katz-Lacabe v. Oracle America Inc.*, No. 22–cv–04792–RS, 2023 WL 2838118, at *7 (N.D. Cal. Apr. 6, 2023) (finding allegations that the plaintiffs' data included "sensitive, health-related types of personal information" sufficient).

[7] Sharp relies on *Steinberg*, which applied Pennsylvania law that "liability for intrusion upon seclusion cannot exist where a defendant *legitimately* obtains information from a plaintiff." *Id.* at 342–43 (emphasis added). Sharp's deliberate deception of Plaintiffs for its own benefit can hardly be considered legitimate. Sharp's reliance on *Raines v. U.S. Healthworks Med. Grp.*, for the sweeping proposition that "mere disclosure of medical information to third parties" is not actionable intrusion similarly fails because *Raines* simply endorsed the unremarkable principle that a defendant does not intrude on the privacy of a plaintiff who knowingly and voluntarily provides medical information for the defendant's *own* use without disclosure to a third party. 2021 WL 5763831, at *9 (S.D. Cal. Jan. 25, 2021) (finding no intrusion where job applicants completed health questionnaire as condition of employment).

[8] Also worth noting, the *Kurowski* order will be revisited. The Plaintiffs were granted leave to amend their claims. Accordingly, the *Kurowski* order on which Defendant relies is of no moment.

In sum, Sharp's argument rests on an erroneous conception of both its role and Meta's in collecting Plaintiffs' data. For its part, Sharp wrongly claims that (1) it first innocently obtained patient data (ignoring the deception used to acquire it) and then disclosed it to Meta; and (2) Meta independently intervened to intrude on the patients' privacy (ignoring that Sharp opened the valve). Cleared of this distortion, Plaintiffs' allegations plainly expose Sharp's invasion of their privacy.

>    **b.   Plaintiffs also sufficiently allege that Sharp's invasion of their privacy was highly offensive**

Courts inform their assessment of an intrusion's offensiveness with "a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *Hernandez*, 47 Cal. 4th at 287, 97 Cal.Rptr.3d 274, 211 P.3d 1063). This calculus "focuses on the degree to which the intrusion is unacceptable as a matter of public policy." *Id*.

Given this fact-intensive inquiry, the question of "[w]hether the conduct was highly offensive can rarely be resolved at the pleading stage." *In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d 935, 946 (N.D. Cal. 2022) (citing *Facebook Tracking*, 956 F. 3d at 606 (9th Cir. 2020)); *Katz-Lacabe*, 2023 WL 2838118, at *8 ("Under California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is.").

This is not one of the unusual cases where the quantum of offensiveness can be determined on the pleadings as a matter of law. Contributing to the offensiveness is the especially sensitive nature of medical information. *See, e.g., Board of Medical Quality Assurance v. Gherardini*, 93 Cal.App.3d 669, 678, 156 Cal.Rptr. 55 (1979) ("A person's medical profile is an area of privacy infinitely more intimate, more personal in quality and nature than many areas already judicially recognized and protected.") (quoting *Hill*,

7 Cal. 4th 1 at 41, 26 Cal.Rptr.2d 834, 865 P.2d 633).[9] Plaintiffs allege that Sharp intentionally shared with Meta "a patient's medical condition, prescriptions, appointments, test results, diagnoses, allergies, sexual orientation, treatment status, reason for requesting an appointment, and more." CAC ¶ 6. Such allegations of "sensitive, health-related types of personal information" are sufficient to withstand a motion to dismiss. *Katz-Lacabe*, 2023 WL 2838118, at *7–8; *see also Facebook Tracking*, 956 F. 3d at 606 (finding that "[t]he ultimate question of whether Facebook's tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage" and recognizing that the alleged tracking practices "[are] a problematic privacy issue.").[10]

### 3. The California Constitution Affords Plaintiffs a Private Right of Action to Seek Damages from Sharp

The California Supreme Court held in *White v. Davis* that Article I, section 1 "creates a legal and enforceable right of privacy for every Californian." 13 Cal.3d 757, 775, 120 Cal.Rptr. 94, 533 P.2d 222 (1975). It is settled that this provision authorizes actions against private defendants as well as public ones. *See, e.g., Am. Acad. of Pediatrics v. Lungren*, 16 Cal.4th 307, 326, 66 Cal.Rptr.2d 210, 940 P.2d 797 (1997) (observing that provision "creates a privacy right that protects individuals from the invasion of their privacy by private parties.")

---

[9] In opposing offensiveness, Sharp asserts that Plaintiffs fail to allege contextual facts regarding "the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." Mot. at 16. Sharp is plainly wrong on all accounts. *See, e.g.,* CAC ¶¶ 5, 8, 39–63 (alleging Sharp's objective of enabling Meta to reap patient data); ¶¶ 66–67, 70, 80 (alleging Plaintiffs' reasonable expectations); ¶¶ 96–102 (alleging high monetary value of patient medical information).

[10] A host of recent cases applying California law have held that similar allegations of surreptitious data collection meet the "highly offensive" requirement. *See, e.g., Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2021 WL 2026726, at *8 (N.D. Cal. May 21, 2021) (following *Facebook Tracking*); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1080 (N.D. Cal. 2021); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 631 (N.D. Cal. 2021); *In re Google Location History Litig.*, 514 F. Supp. 3d 1147 (N.D. Cal. 2021). *See also In re Google Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 150–151 (3d. Cir. 2015) (applying California law to hold that users of Google's web browser sufficiently alleged that its practice of circumventing cookie blockers was highly offensive).

Sharp overstretches case law to argue that Article I, section 1 does not afford Plaintiffs the right to recover money damages from Sharp. At most, it *might* not allow damages claims against *governmental* entities, but the California courts have yet to authoritatively decide that issue.[11] Even if damages are unavailable in actions against public bodies, plaintiffs are free to seek them from private defendants like Sharp who are not covered by section 815.6 of the California Government Code which provides that *public* entities are liable for damages only for violations of "mandatory duties."[12] Gov. Code § 815.6 (emphasis added). There is no such limitation for claims against private defendants.

## C.    Plaintiffs State a Claim for Violation of CIPA

### 1.    Sharp is Liable for Enabling Meta's Conduct

It is axiomatic that a violation of CIPA may be based on enabling the unlawful conduct of another. Section 637.2 provides a civil right of action for any violation of Section 631(a), which states that a civil claim may be brought against "any person who . . . aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done" any of the enumerated acts. Cal. Penal Code § 631(a). In response, Sharp argues that liability exists only for criminal "aiding and abetting" with "specific intent," and that Plaintiffs fail to allege supporting facts. Mot. at 25-27. Sharp is mistaken.

---

[11] Several courts have acknowledged the uncertainty of damages as a remedy in actions against public defendants. *See, e.g., Katzberg v. Regents of Univ. of Cal.*, 127 Cal.Rptr.2d 482, 58 P.3d 339, 347 n.13 (2002) (collecting cases); *Julian v. Mission Cmty Hosp.*, 11 Cal.App.5th 360, 392, 218 Cal.Rptr.3d 38 (2017) (more recently commenting in action against various public entities that availability of damages "is not entirely settled").

[12] This statute reads in its entirety: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." Calif. Gov. Code § 815.6. This provision is built into the CTCA, Calif. Gov. Code §§ 810–996.6, as a limitation on the state's waiver of sovereign immunity from civil liability. *See, e.g., State Dep't of State Hosps. v. Super. Ct.*, 61 Cal. 4th 339, 347–348, 188 Cal.Rptr.3d 309, 349 P.3d 1013 (2015) (explaining California's statutory scheme of governmental liability and immunity).

*First*, Sharp's recitation of criminal "aiding and abetting" elements ignores that Section 631(a) also imposes liability on one who "aids, *agrees with*, *employs*, *or conspires*" with another violator. Cal. Penal Code § 631(a) (emphasis added). Plaintiffs contend that Sharp, by deliberately installing the Pixel on its website, and knowing that confidential health information would be transmitted to Meta, also "agree[d]" with, "employ[ed]," and "conspire[ed]" with Meta to unlawfully intercept confidential communications. CAC ¶¶ 6, 14, 61. These words should be given their "usual and ordinary meaning." *See Gruber v. Yelp Inc*., 55 Cal. App. 5th 591, 605 (2020) (California courts give words "their usual and ordinary meaning"). Indeed, "the California Supreme Court has instructed courts to interpret CIPA in the manner that fulfills the legislative purpose of CIPA by giving greater protection to privacy interests." *Matera v. Google Inc*., No 15-CV-04062-LHK, 2016 WL 8200619, at *19 (N.D. Cal. Aug. 12, 2016) (citing *Flanagan v. Flanagan*, 27 Cal. 4th 766 (2002)).[13]

Accordingly, California State and federal courts have sustained CIPA claims based on allegations against healthcare providers and other entities similar to Plaintiffs' allegations against Sharp. *See, e.g., Bustos, et al v. Riverside County Med. Center* (Riverside Cnty. Sup. Court No. CVRI2203466) (holding plaintiffs plausibly allege violations of CIPA against healthcare provider that embedded Meta pixel on its website) (attached hereto as Ex. A to the Declaration of Todd D. Carpenter ("Carpenter Dec.")); *Revitch v. New Moosejaw, LLC*, No. 18-CV-06827-VC, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) ("Although Moosejaw cannot be liable for eavesdropping on its own communications with Revitch, the complaint adequately alleges that Moosejaw violated section 631 by *enabling* NaviStone's wrongdoing.") (emphasis added); *see also Saleh v.*

---

[13] To be sure, only the term "aid" appears in Section 631(a). The term "abet" is absent. And California courts have "long noted a distinction between the terms 'aid' and 'abet.'" *People v. Campbell*, 25 Cal. App. 4th 402, 413-14 (1994). "Aid" only requires "some conduct by which one becomes 'concerned in the commission of a crime' (§ 31), whether it be to aid (i.e., assist or supplement), promote, encourage, or instigate." *Id*. "Abet," on the other hand, "requires that this conduct be accompanied by the requisite criminal state of mind, i.e., knowledge of the perpetrator's unlawful purpose and with the intent that it be facilitated." *Id*.

*Nike, Inc.*, 562 F. Supp. 3d 503, 520–21 (C.D. Cal. 2021) ("Plaintiff further alleges Nike facilitated FullStory's actions by *voluntarily embedding* FullStory's software code on its website. Viewing the allegations as true and accepting all reasonable inferences in favor of Plaintiff, Saleh pleads sufficient facts regarding FullStory's conduct to state a claim for violation of § 631(a).") (emphasis added); *In re: Lenovo Adware Litig.*, No. 15-MD-02624-RMW, 2016 WL 6277245, at *8 (N.D. Cal. Oct. 27, 2016) (same).

*Second*, Sharp does not discuss any case holding that *civil* remedies under CIPA require proof of *criminal* "aiding and abetting." While Sharp notes that the instant provisions are found in the penal code, that is irrelevant for purposes of a civil claim. *See Kearney v. Salomon Smith Barney, Inc*., 39 Cal. 4th 95, 116 n.6 (2006) ("Although the invasion-of-privacy statutory scheme appears in the Penal Code and the Legislature chose to impose penal as well as civil sanctions for conduct that is prohibited by the legislation . . . The reach of section 637.2 would be the same if placed . . . in the Civil Code").

*Third*, even assuming a criminal "aiding and abetting" theory with allegations of "specific intent" is required—it is not—dismissal is not warranted here. "A person aids and abets the commission of a crime when he or she, (i) with knowledge of the unlawful purpose of the perpetrator, (ii) and with the intent or purpose of committing, facilitating or encouraging commission of the crime, (iii) by act or advice, aids, promotes, encourages or instigates the commission of the crime." *Campbell*, 25 Cal. App. 4th at 409 (citing *People v. Cooper*, 53 Cal. 3d 1158, 1164 (1991)).

Plaintiffs plausibly allege each of these elements. Sharp "intentionally embedded Meta Pixel on its appointment scheduling page and website, and without its patients' knowledge or consent, Sharp shared with Meta every patient's interaction with its appointment scheduling page." CAC ¶¶ 5, 39-63. The information Sharp intentionally shared with Meta included sensitive health information statutorily protected from unauthorized disclosure to third parties absent the patient's consent. *Id.* ¶¶ 6, 39-63. Based on the design of Meta Pixel and intentionally incorporating it onto Sharp's

1    website, Sharp was well aware that Meta Pixel "would result in the disclosure and use

2    of Plaintiffs' and Class members' sensitive health information." *Id.* ¶¶ 90-95. Meta, in

3    turn, is a repeat violator of privacy laws with a history of privacy deficiencies. *Id.* ¶¶ 34-

4    38. Sharp ignored warnings that Meta's data collection practices were improper, like

5    those given by a patient portal company and the state of New York. *Id.* ¶¶ 90-95.

6         These allegations, supported by plausible inferences, must be accepted as true for

7    purposes of a motion to dismiss.

8             **2.    Plaintiffs Adequately Allege that "Content Information" Was Disclosed to Meta**

9

10        Plaintiffs specifically allege that the full-string URLs described in the CAC,

11   coupled with microdata that includes the text, titles, headers, images, image captions,

12   links, and other information located on the webpage, contain user-entered and user-

13   specific information that constitutes content information. CAC ¶¶ 44-63. Sharp's

14   arguments to the contrary are futile. *See* Mot. at 27-28.

15        Under CIPA,[14] the term "'contents' refers to the intended message conveyed by

16   the communication and does not include record information regarding the characteristics

17   of the message that is generated in the course of the communication." *In re Zynga Priv.*

18   *Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Record information and content, however,

19   "are not mutually exclusive categories." *In re Google Inc. Cookie Placement Consumer*

20   *Priv. Litig.*, 806 F.3d 125, 139 (3d Cir. 2015); *In re Google RTB Consumer Priv. Litig.*,

21   No. 21-cv-2155-YGR, 2022 WL 2165489, at *10 (N.D. Cal. June 13, 2022) (finding that

22   categories of the website, categories that describe the current section of the website, and

23   referrer URL that caused navigation to the current page constituted "content").

24   Information that would otherwise be considered "record information"—such as names,

25   addresses, telephone numbers, and email addresses—may be "contents" of a

26

27   _____

28   [14] "The analysis for a violation of CIPA is the same as that under the federal Wiretap Act." *In re Meta Pixel Healthcare Litig.*, No. 22-cv-03580-WHO, 2022 WL 17869218, at *14 (N.D. Cal. Dec. 22, 2022).

communication "where the user communicates with a website by entering his information into a form provided by the website." *Saleh*, 562 F. Supp. 3d at 517. "For instance, contact information provided as part of a sign-up process constitutes 'content' because this information is the subject of the communication." *In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, at *11. The "post-domain name portions" of website URLs—everything after ".com"—may also disclose details about the webpage requested and constitute "content" under CIPA. *See In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d at 139 ("post-domain name portions of the URL are designed to communicate to the visited website which webpage content to send the user.").

*In re Meta Pixel Healthcare Litigation* is instructive. There, "four Facebook users" brought wiretapping claims against Meta Platforms, Inc., alleging their healthcare providers "installed the Meta Pixel on their patient portals." 2022 WL 17869218, at *1. Meta asserted that "the names of buttons clicked on websites and their associated URLs are not 'content' within the meaning of the statute," *id.* at *11, but the court "disagree[d]," observing that "the transmitted URLs include both the 'path' and 'query string,'" and holding that "[t]hese items are content because they concern the substance of a communication." *Id.* Indeed, the court specifically identified the following URL as constituting "content" under CIPA: hardfordhospital.org/services/digestive-health/ conditions-we-treat/colorectal-small-bowel-disorders/ulcerative-colitis. *Id.* The court further found that information regarding "log-in button" clicks were similarly descriptive in part because it "sufficiently identifies the website user as a patient." *Id.*, at *8, 11.

So too here. Plaintiffs allege that Sharp's Pixel shared a patient's identity, medical condition, prescriptions, appointments, test results, diagnoses, allergies, sexual orientation, treatment status, reason for requesting an appointment, and more. CAC ¶ 6. Meta Pixel transmitted PageView, Microdata, and ButtonClick data, which sent the URL of the page requested, along with the title of the page, keywords associated with the page, and a description of the page. *Id.* at ¶¶ 39-44, 45-50, 61-63. This includes the

patient's unique and persistent Facebook ID, the fact that the patient clicked on a specific provider's profile page, the patient's search parameters (which contain the patient's treatment and/or diagnoses), and the patient's location filter. *Id.* Meta Pixel also disclosed the fact that a patient booked an appointment with a particular doctor, including the identity of the patient's physician, and the fact that the user called the doctor's office. *Id.* ¶¶ 32, 51-56. Plaintiffs are patients of Sharp, used Sharp's appointment scheduling page, filled out online forms with medical and personal information including the reason for visit and, thus, had "contents" of their communications improperly disclosed to Meta. *Id.* ¶¶ 64-69.

Because Sharp revealed the same type of information as the healthcare providers in *In re Meta Pixel Healthcare Litigation*, the same result should be reached. *See also Facebook Tracking*, 956 F.3d at 605 (finding that Facebook intercepted the content of the plaintiffs' communications by "collect[ing] a full-string detailed URL, which contains the name of a website, folder and sub-folders on the web-server, and the name of the precise file requested"); *Katz-Lacabe*, 2023 WL 2838118 at *15 (N.D. Cal. Apr. 6, 2023) (holding that "referrer URLs" constitute content).

### 3.     Plaintiffs Plausibly Allege an Interception Occurred

Sharp's final argument—that no interception "in transit" occurred under CIPA—should be given short shrift. Mot. at 28-29. Not even Meta disputes that Meta Pixel operates as an interception. *See In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, at *11-14 ("Meta does not dispute that the intentional or interception elements are met" under the ECPA [federal Wiretap Act] or CIPA).

The interception requirement is not a literal one. Rather, it occurs "when the contents of a wire communication are captured or re-directed in any way." *Noel v. Hall*, 568 F.3d 743, 749 (9th Cir. 2009) (examining the analogous federal Wiretap Act); *In re Meta Pixel*, 2022 WL 17869218, at *11 ("the Ninth Circuit has construed the term [intercept] according to its ordinary meaning as the "act of acquiring, or coming into possession of"). The interception of an electronic communication **includes** the

19

*simultaneous transmission of duplicate communications*. *Revitch*, 2019 WL 5485330, at *2; *Facebook Tracking*, 956 F.3d at 608 ("Permitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion, allowing the exception to swallow the rule.").

According to Sharp, "rather than an interception, two separate communications occur—one between the hospital website and the user's browser, and one between the user's browser and Facebook." Mot. at 28. But Plaintiffs do not allege that the Pixel operates by sending sequential transmissions, as Sharp implies. As described in the CAC, when a visitor wishes to access Sharp's website, they enter the web address into their browser which then sends a GET Request to Sharp's server. CAC ¶¶ 47, 53-54, 61-63. The server responds by sending a GET Response which contains the webpage and the embedded Meta Pixel code. *Id.* If no Meta Pixel had been returned with the original GET Response, each time the visitor interacted with the website, a GET Request would be sent from the browser only to Sharp's server. However, because Meta Pixel is embedded on Sharp's webpage, it commands the browser to send two GET Requests *in tandem*—one to the intended recipient, Sharp's server, and another, unbeknownst to the visitor, to Meta. *E.g.,* CAC ¶¶ 22 ("[a]s soon as a website user takes any action on a webpage that includes Meta Pixel, it *redirects* the user's communication to Meta") (emphasis added), 51 ("simultaneous" transmission), 157 (transmission "in real time"). Accordingly, it is not that the communication travels from A (the browser) to B (Sharp's server) and then from A (the browser) to C (Meta). Here, the communication travels from A (Plaintiffs) to both B (Sharp) and C (Meta) at the same time and from the same place. The scenario here is thus akin to that in *Revitch v. New Moosejaw LLC*:

> [T]he particulars of the eavesdropping mechanism are of little consequence to the section 631 analysis. Revitch began each communication by pressing a button on his mouse or a key on his keyboard, causing one signal to travel to his computer and then through his browser to Moosejaw's server. Even if the browser caused a parallel signal to be sent to NaviStone, that intervention happened while the signal was already in transit from Revitch's device. Section 631's protections extend explicitly to the beginnings and ends of

20

communications, so there is no reason to consider the first part of an electronic communication beyond the statute's reach.

2019 WL 5485330, at *2.

Other courts similarly conclude that duplication and transmission of user actions are interceptions of a communication "in transit." *See Rickwalder v. Meta Platforms, Inc.*, No. 21cv3833231, at 29 (Cal. Sup. Ct. Sept. 15, 2022) (declining to dismiss CIPA claim based on Meta Pixel) (attached as Ex. B to the Carpenter Dec.); *Brown*, 525 F. Supp. 3d at 1072 (discussing interception involving duplicate GET requests); *see also Facebook Tracking*, 956 F.3d at 608.

Sharp's reliance on inapposite case law cannot revive their otherwise unsuccessful argument here. *See*, *e.g.*, Mot. at 28 (citing *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 951 (N.D. Cal. 2017) (discussing personal jurisdiction over certain healthcare defendants and omitting to analyze the "interception" element of CIPA).

### D.   Plaintiffs State a Claim for Violation of CMIA

#### 1.   Plaintiffs Plausibly Allege Medical Information Was Disclosed

The CMIA states that a "provider of health care . . . shall not disclose medical information regarding a patient of the provider of health care . . . without first obtaining an authorization . . ." Cal. Civ. Code § 56.10(a). "'Medical information' means any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care . . . regarding a patient's medical history, mental health application information, mental or physical condition, or treatment." Cal. Civ. Code § 56.05(i). In turn, "'individually identifiable' means that the medical information includes or contains any element of personal identifying information sufficient to allow identification of the individual." *Id.* California courts have interpreted this statutory language to require disclosure of individually identifiable information that has a "substantive" medical treatment nexus. *Wilson v. Rater8, LLC*, No. 20-CV-1515-DMS-LL, 2021 WL 4865930, at *4 (S.D. Cal. Oct. 18, 2021). Thus, while the fact that a person was a patient at a particular facility may not communicate substantive information

regarding a medical condition, treatment, or history, revealing the *nature* of the treatment does. *E.g., Colleen M. v. Fertility & Surgical Assocs. of Thousand Oaks*, 132 Cal. App. 4th 1466, 1472 (2005) (distinguishing between disclosing that a person is a patient of a particular healthcare facility and disclosing the nature of the patient's treatment) (emphasis added); *c.f. Eisenhower Med. Ctr. v. Sup. Ct.* 226 Cal. App. 4th 430, 434-36 (2014) (explaining that the compromised information amounted only to "individually identifiable information" because it did not show specific medical concerns or treatments).

The specific medical information disclosed to Meta included a patient's medical condition, prescriptions, appointments, test results, diagnoses, allergies, sexual orientation, treatment status, and reason for requesting an appointment. CAC ¶¶ 6, 32-33, 40-63. This information was disclosed through, among other things, the Pixel's PageView (*id.* ¶¶ 45-49, 62-63) and ButtonClick (*id.* ¶¶ 51-55) trackers. As detailed above, the Pixel disclosed search terms (involving medical conditions or treatment) entered on Sharp's website and full URLs, in addition to pre-determined filters, which contain a patient's treatment, procedures, medical conditions, and related queries. *Id.* This sensitive information was sent to Meta along with the patient's IP address and Facebook IDs, which Meta used to link to corresponding Facebook profiles, and which unlawfully identified patients. *Id.* ¶¶ 56-61. Such a disclosure extends far beyond information "available on publicly accessible websites" as Sharp incorrectly contends. Mot. at 21 (quoting *Smith v. Facebook, Inc.*). As demonstrated, the information at issue here is far broader and more intrusive than the fact that a person may have visited Sharp and browsed its website—the information contains within it a specific patient's health concern, treatment, or condition.

Notably, in response to the use of Pixel tracking by HIPAA-covered entities like Sharp, the U.S. Dep't. of Health & Human Services recently issued a bulletin reminding website owners that use of these tools can result in impermissible disclosures:

> The HIPAA Rules apply when the information that regulated entities collect through tracking technologies or disclose to tracking technology vendors includes protected health information (PHI). Some regulated entities may share sensitive information with online tracking technology vendors and such sharing may be unauthorized disclosures of PHI with such vendors. **Regulated entities are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of PHI to tracking technology vendors or any other violations of the HIPAA Rules.** For example, disclosures of PHI to tracking technology vendors for marketing purposes, without individuals' HIPAA-compliant authorizations, would constitute impermissible disclosures. . . . Such disclosures can reveal incredibly sensitive information about an individual, including diagnoses, frequency of visits to a therapist or other health care professionals, and where an individual seeks medical treatment.

Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates, U.S. DEPT. OF HEALTH & HUMAN SERV., https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html (last visited April 5, 2023) (emphasis in original).

Thus, Sharp disclosed medical information related to conditions and treatment, which was individually identifiable as it was linked to Facebook IDs.[15] The disclosure of this data is sufficient to meet the requirement of "substantive" medical information. *Tamraz v. Bakotic Pathology Assocs., LLC*, 2022 WL 16985001, at *5 (S.D. Cal. Nov. 16, 2022) ("Drawing reasonable inferences in favor of the non-moving party, the Court finds that 'specimen or test information' is 'medical information' under the CMIA. Therefore, Plaintiff adequately alleges the data breach included 'medical information' under the CMIA."). This disclosure is sufficient to state a claim under the CMIA. Carpenter Dec., Ex. A at 4 of 5 (holding plaintiffs plausibly allege violations of CMIA against healthcare provider that embedded Meta pixel on its website).

Sharp also argues that Plaintiffs fail to allege their own information was shared, as opposed to patients generally. Mot. at 20. This ignores the allegations of the CAC.

---

[15] "A Facebook ID is a unique identifier that allows anyone to discover the user's identity. Furthermore, courts in other circuits have explicitly held that a Facebook ID constitutes PII." *Belozerov v. Gannett Co.*, No. CV 22-10838-NMG, 2022 WL 17832185, at *4 (D. Mass. Dec. 20, 2022); *accord In re Hulu Priv. Litig.*, 2014 WL 1724344, at *14 (N.D. Cal. Apr. 28, 2014) ("The Facebook User ID . . . personally identifies a Facebook user.").

Each Plaintiff was a patient of Sharp and used Sharp's website and appointment scheduling page. CAC ¶ 64. Through that process, Plaintiffs entered sensitive personal and health information, including "reason for the visit," which was shared with Meta via the Pixel. *See*, *e.g.*, *id.* ¶ 10 (Plaintiff Cousin entered "sensitive medication information to dictate the reason for her visit to Sharp"); ¶ 13 (Plaintiff Barbat sent "personal and confidential messages to health care providers" through Sharp). Accordingly, based on Plaintiffs' characterization of Meta Pixel, accepting all well-pleaded allegations as true, and "[d]rawing reasonable inferences in favor of the non-moving party," Sharp unlawfully shared Plaintiffs' medical information under the CMIA. *Tamraz*, 2022 WL 16985001, at *5. Sharp's fact-based challenge must be rejected at this stage.

### 2. Plaintiffs Plausibly Allege Meta Viewed Medical Information

According to Sharp, Plaintiffs fail to allege anyone at Meta actually viewed the disclosed medical information. Mot. at 22. At the pleading stage, however, Plaintiffs need only plead facts that "give rise to the inference that their medical information has been viewed by an unauthorized third party." *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284, 1299 (S.D. Cal. 2020) ("Plaintiffs have plausibly pled facts that could give rise to the inference that their medical information has been viewed by an unauthorized third party.").

For example, in *In re Solara Med. Supplies*, allegations that plaintiffs received an increase in spam emails and phone calls were sufficient to infer that their medical information was viewed as a result of a data breach. *Id.*; *see also In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1218 (S.D. Fla. 2022) (declining to dismiss CMIA claim); *Inmediata Health*, 501 F. Supp. 3d at 923 (finding that for information "posted . . . on the internet . . . it can be reasonably inferred that someone viewed it.").

Plaintiffs plausibly allege such facts. Meta, a company that derives its revenue from selling advertising space based on its ability to target consumers with precision accuracy, ultimately receives and uses the data. CAC ¶¶ 27. Meta "uses" Plaintiffs'

"sensitive health information" for marketing purposes, which necessarily requires it to be viewed and analyzed. *Id.* ¶ 34. Indeed, it is unclear how Meta could process and categorize the data it receives without first learning the contents of that data. Either way, Plaintiffs are permitted to allege on information and belief that Meta's personnel regularly view data collected via Meta Pixel in connection with targeted marketing. *See Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (*Twombly* "does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant"). As such, Plaintiffs' allegations are sufficient to infer that Plaintiffs' medical information was viewed by Meta and its employees.

## IV.   ANY DISMISSAL SHOULD BE WITH LEAVE TO AMEND

If a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the Court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Indeed, leave to amend is generally improper only "where the amendment would be futile." *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992). If the Court deems any of the claims inadequately pleaded, Plaintiffs can cure any deficiencies by providing further clarity into the operation of Meta Pixel. For this reason, Plaintiffs respectfully request that Sharp's motion be denied.

## V.   CONCLUSION

For the foregoing reasons, the motion to dismiss should be denied in its entirety.

Dated: May 3, 2023                          **LYNCH CARPENTER LLP**

By:   */s/Todd D. Carpenter*
Todd D. Carpenter (SBN 234464)
todd@lcllp.com
1350 Columbia St., Ste. 603
San Diego, CA 92101
Tel.:   619-762-1910
Fax:   619-756-6991

Nicholas A. Colella
nickc@lcllp.com
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel.:  412-322-9243

Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Christopher E. Stiner (SBN 276033)
cstiner@ahdootwolfson.com
Deborah De Villa (SBN 312564)
ddevilla@wolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505
Tel.:  310-474-9111
Fax:  310-474-8585

Alexander E. Wolf (SBN 299775)
awolf@milberg.com
John J. Nelson (SBN 317598)
jnelson@milberg.com
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive, Penthouse
Beverly Hills, CA 90212
Tel:  872-365-7060

Jason S. Hartley (SBN 192514)
hartley@hartleyllp.com
**HARTLEY LLP**
101 W. Broadway, Ste 820
San Diego, CA 92101
Tel:  619-757-3472

*Counsel for Plaintiffs and the Putative Class*

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS
CASE NO. 3:22-CV-02040-MMA-DDL