TERESA C. CHOW (SBN 237694)
tchow@bakerlaw.com
ALEXANDER VITRUK (SBN 315756)
avitruk@bakerlaw.com
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone: 310.820.8800
Facsimile: 310.820.8859

PAUL G. KARLSGODT (*admitted pro hac vice*)
pkarlsgodt@bakerlaw.com
**BAKER & HOSTETLER LLP**
1801 California Street Suite 4400
Denver, CO 80202
Telephone: 303.861.0600
Facsimile: 303.861.7805

*Attorneys for Defendant*
SHARP HEALTHCARE

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANNAH COUSIN, LINDA CAMUS, DEANNA FRANKLIN-PITTMAN, and EDWARD BARBAT individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SHARP HEALTHCARE,<br><br>Defendant. | Case No.: 3:22-cv-02040-MMA-DDL<br><br>**DEFENDANT SHARP HEALTHCARE'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Date: TBD<br>Time: TBD<br>Location: Ctrm 3C<br>Judge: Hon. Michael M. Anello<br><br>Action Filed: 11/22/2022<br>Consolidated Action Filed: 03/03/2023 |

Defendant SHARP HEALTHCARE ("Sharp") respectfully submits this Reply in support of Sharp's Motion to Dismiss [ECF No. 15] (the "Motion").

## I. INTRODUCTION

Nowhere in the Complaint or opposition to Sharp's Motion do Plaintiffs allege facts showing that Sharp disclosed any of their actual medical information or the contents of any confidential medical communications with their medical providers. Plaintiffs offer to "cure any deficiencies by providing further clarity into *the operation of Meta Pixel*." Opp. at 25:18-29 (emphasis added). Tellingly, Plaintiffs do *not* offer to allege facts showing what specific information about themselves has been transmitted to Meta. Because the proposed amendments will not provide any additional detail into what the Plaintiffs did on the Sharp website, they will not cure the deficiencies in the Complaint. As a result, Plaintiffs' claims fail both as a matter of law and for insufficient factual allegations, and the insufficient factual allegations will not be cured by the proposed amendment.

## II. BREACH OF FIDUCIARY DUTY CLAIM IS FATALLY DEFECTIVE

### A. The California Supreme Court Clarified In *Moore* That A Hospital Does Not Stand In A Fiduciary Relationship With Its Patients

In *Moore v. Regents*, 51 Cal.3d 120 (1990), the California Supreme Court found that an individual doctor may be held liable for disclosing a patient's private medical information, but not the hospital or other entity defendants, holding: **"[I]n contrast to [the individual doctor], none of these [hospital or entity] defendants stood in a fiduciary relationship with [the patient]** or had the duty to obtain [the patient's] informed consent to medical procedures." *Id*. at 133 (emphasis added).[1]

---

[1] *Moore* controls here as a matter of law. *See, e.g., Ortland v. Cnty. of Tehama*, 939 F. Supp. 1465, 1468 (E.D. Cal. 1996) (California district court is "bound by the pronouncements of the California Supreme Court") (citing to *Minnesota ex rel. Pearson v. Probate Ct.*, 309 U.S. 270, 273 (1940)).

Plaintiffs' opposition omits the emphasized text and proclaims that *Moore* is limited to "informed consent case[s]." Opp. at 6:13. The plain text of *Moore* shows otherwise.[2] And by relying on cases involving "the [individual] doctor-patient relationship" (Opp. at 5:6-11), Plaintiffs' opposition underscores that a doctor-patient relationship is fundamentally different from any association a hospital system may have with its patients. *Id*. (citing to *Ruiz v. Podolsky*, 50 Cal.4th 838 (2010) (involving only an individual doctor defendant)).

Plaintiffs do not cite to a single California state or federal decision holding that a hospital system stands in a fiduciary relationship with its patients. In fact, other than *Ruiz*, Plaintiffs do not cite to a single California or Ninth Circuit case involving a breach of fiduciary duty claim brought by a patient against a medical professional.

Instead, Plaintiffs cite to inconsequential rulings in data breach cases that either (a) did not apply California law (Opp. at 5:20-28), or (b) did not involve a breach of fiduciary duty claim but rather claims involving non-fiduciary duties (*e.g.*, negligence). *Id*. at 7:2-10.[3] None of these decisions can overcome the California Supreme Court's ruling in *Moore* as a matter of law. *Ortland*, 939 F. Supp. at 1468. Because a hospital system does not stand in a fiduciary relationship with its patients, any amendment to the breach of fiduciary duty claim against Sharp would be futile.

### B. Plaintiffs Cannot Repackage An Alleged Violation Of HIPAA Or The CMIA Through A Breach Of Fiduciary Duty Claim

Plaintiffs do not dispute that the Health Insurance Portability and Accountability Act ("HIPAA") is administrative in nature and does not permit a

---

[2] Had the California Supreme Court wanted to restrict its holding, it would have done so expressly. *See e.g., Castro v. Super. Ct.*, 9 Cal. App. 3d 675, 710 (1970) (noting when a court "was careful to restrict its holding."). It did not.

[3] The brief discussion of a "special relationship" in *Stasi v. Inmediata Health Group Corporation*, 501 F. Supp. 3d 898 (2020) concerned the question of whether the economic loss doctrine barred the *Stasi* plaintiffs' negligence claim.

private right of action. *See* Mot. at 13:15-27. Plaintiffs do not even attempt to distinguish the authorities Sharp cited that held HIPAA cannot form the basis of any duty (let alone a fiduciary one) owed by Sharp to Plaintiffs. *Id*. at 13:21-27 (cases).

Instead, Plaintiffs double down and proclaim that, because "Section 56.01 of the CMIA" and "Section 164.105 of HIPPA [sic]" are "statutorily implemented industry standards," Sharp "breached its fiduciary duty to safeguard the confidential nature of Plaintiffs' and Class Members sensitive PII/PHI." *See* Opp. at 7:11-12, 17-20. Plaintiffs do not cite to a single authority in support of this proclamation. The only case they cite, *Regents of Univ. of Cal. v. Super. Ct.*, 220 Cal. App. 4th 549, 566 (2013), *as modified on denial of reh'g* (Nov. 13, 2013), involved a CMIA claim only, not a breach of fiduciary duty claim, and is therefore irrelevant.

### C. Plaintiffs Do Not Meaningfully Dispute That The Complaint Fails To State Facts Showing That Sharp Breached Any Fiduciary Duty

As for the element of breach, Plaintiffs do not meaningfully dispute that:

- The Complaint pertains only to Sharp's public website, not the private patient portal. Only public website URL browsing data, not "medical information" or "personal health information," is at issue.
- The only *facts* Plaintiffs have alleged about *themselves* is that they visited Sharp's website and booked appointments. Plaintiffs plead no facts showing what specific "medical information" was disclosed.
- There are no factual allegations in the Complaint that someone at Meta actually viewed any specific medical information (*see infra* 6-7).

Crediting any one of these tacit admissions, Plaintiffs have failed to state facts establishing breach of any fiduciary duty. *Shull v. Ocwen Loan Servicing, LLC*, No. 13-CV-2999-BEN (WVG), 2014 WL 1404877, at *2 (S.D. Cal. Apr. 10, 2014) ("Where a party fails to address arguments against a claim raised in a motion to dismiss, the claims are abandoned and dismissal is appropriate.").

### III. COMMON LAW AND CONSTITUTIONAL PRIVACY CLAIMS FAIL

#### A. Sharp Cannot Be Held Liable For Allowing A Third Party (Meta) To Collect The Data Plaintiffs Allege Sharp Later Disclosed

In seeking to hold Sharp liable for intrusion upon seclusion, Plaintiffs attempt to conflate Sharp with a nonparty actor, Meta. The distinction is critical. Under the well-reasoned and instructive *Kurowski v. Rush*, No. 22 C 5380, 2023 WL 2349606 (N.D. Ill. Mar. 3, 2023) decision from the Northern District of Illinois, which this Court should adopt, Sharp cannot be held liable for allowing a third party to collect the data Plaintiffs allege Sharp later disclosed. *See* Mot. at 15:9-16:2. Plaintiffs have no meaningful response to *Kurowski*. Instead, they backtrack on their own allegations and now claim that "Sharp both obtained and disclosed their patient data" (Opp. 10:7-9), when the Complaint alleges it was a third party, Meta, who obtained patient data through its third-party source code, the Meta Pixel. *See, e.g.,* Compl. ¶¶ 3, 6, 22, 24, 32, 37 (alleging Meta "collects," "receives," and "captures" patient data). The Court cannot credit new allegations in an opposition to a motion to dismiss. *Schneider v. Cal. Dep't of Corrections*, 151 F.3d 1194, 1197 at n.1 (9th Cir. 1998). Regardless, any new allegations would fail as a matter of law under *Kurowski* and related case law, given the undisputed factual distinctions between Sharp, Meta, and the third-party source code allegedly created and operated by Meta.

Plaintiffs otherwise rely solely on *In re Facebook Tracking Litig.*, 956 F.3d 599 (9th Cir. 2020), but this decision only highlights the key distinction between Sharp and Meta (f/k/a Facebook). *Facebook Tracking Litigation* involved defendant Facebook's **own source code**, not a third party's source code that allegedly intercepted and obtained the data. *Facebook Tracking Litigation* and *Kurowski* are therefore entirely consistent with one another. Plaintiffs' efforts to conflate Sharp and Meta by simply arguing "Sharp opened the valve" should be rejected. Opp. at 12:5.

### B. The Opposition Underscores That Plaintiffs Fail to Plead Facts Showing That Any Intrusion Upon Seclusion Was Highly Offensive

The *Kurowski* decision shows that Plaintiffs alleged online communications are "not protected private health information," even if they "identifie[d] an individual patient by name." 2023 WL 2349606 at **6, 9. Plaintiffs fail to allege facts showing that Sharp engaged in highly offensive conduct, especially given (a) the Complaint concerns only URL browsing data on Sharp's public website; (b) Plaintiffs fail to state facts showing what, if any, of their own "medical information" was actually disclosed; and (c) Plaintiffs do not allege facts showing that someone at Meta actually viewed any specific medical information. Plaintiffs also fail to holistically consider "likelihood of serious harm to the victim," "the intruder's motives and objectives," and any "countervailing interests." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009).

In opposition, Plaintiffs all but concede these points, arguing in blanket fashion that "[t]his is not one of the unusual cases where the quantum of offensiveness can be determined on the pleadings as a matter of law," particularly in light of "the especially sensitive nature of medical information." Opp. at 12:21-22. That is a red herring because Plaintiffs fail to plead facts showing *their medical information* was disclosed. Even in opposition, Plaintiffs recite the conclusory allegation that Sharp shared with Meta some unspecified "patient's medical condition, prescriptions, appointments, test results, diagnoses, allergies, sexual orientation, treatment status, reason for requesting an appointment, and more." *Id*. at 13:2-4. But this is not *Plaintiffs'* medical information. Without pleading facts showing that the Plaintiffs' own medical information was disclosed to Meta, they have failed to plead a violation of this common law claim.

The authorities Plaintiffs rely upon are distinguishable because they involved facts showing highly offensive conduct as to the plaintiff. *Cf*. Mot. at 17:27-18:13

(distinguishing *Facebook Tracking Litigation*, which distinctions Plaintiffs do not meaningfully dispute). In *Katz-Lacabe v. Oracle Am., Inc.*, No. 22-CV-04792-RS, 2023 WL 2838118 (N.D. Cal. Apr. 6, 2023), Oracle allegedly used (a) its *own* seven (7) different technologies, just one of which were tracking pixels like the Meta Pixel; to (b) secretly store users' "life events (*e.g.*, marriage), education. . . health and wellness (e.g., weight, sleep habits, and categories like 'Aging & Geriatrics' and 'Pain Relief,'"; and (c) worked with 65 data brokers to "profit from the sale of allegedly sensitive personal information including race, location, politics, and medical information." *Id*. at *1-2. The allegations here regarding third party source code on Sharp's public website—purportedly tracking URL browsing data that is not even specific to Plaintiffs—do not come close to the factual allegations in *Facebook Tracking Litigation* and *Katz-Lacabe.* The motion to dismiss should be granted.

### C. Money Damages Are Not Available For A Privacy Claim Under The California Constitution

Plaintiffs appear to argue that the prohibition on money damages under Article I, Section I of the California Constitution applies only to *public entities*, but fail to cite any limitation in the statute or case law, because there is none. To the contrary and consistent with the seminal *Clausing* ruling from the California Court of Appeal, the Northern and Eastern Districts have broadly held in multiple decisions that money damages are *not* available for constitutional privacy claims. *See* Mot. at 19:21-20:7. None of the cases cited by Plaintiffs alter that analysis or restrict the prohibition on money damages under Article I, Section I to public entities. *See* Opp. at 13:13-14:9.

### IV. PLAINTIFFS' CMIA CLAIM FAILS BECAUSE PLAINTIFFS HAVE NOT PLED FACTS SHOWING DISCLOSURE OR THAT ANYONE AT META VIEWED THE ALLEGED DATA

First, Plaintiffs concede that they have not alleged that anyone at Meta viewed the allegedly intercepted data, and do not even attempt to distinguish *Sutter Health*

*v. Super Ct.*, 227 Cal. App. 4th 1546 (2014). Plaintiffs instead ask the Court to draw "the inference" that Meta personnel actually viewed the information. Opp. at 24:13-25. This amounts to pure speculation or a sheer possibility at best, which is insufficient to survive dismissal. Indeed, it does not follow that any disclosed data is viewed by live Meta personnel as required by *Sutter Health* and its progeny.

Second, Plaintiffs have not pled facts showing *their own* medical information was intercepted and disclosed to an unauthorized person. Plaintiffs' allegations about how the Meta Pixel *could* work (Compl. ¶¶ 19-38) are untethered to Plaintiffs' and Sharp's circumstances. As a result, no more than a "sheer possibility" of purported misconduct is shown, and Plaintiffs' CMIA claims should be dismissed. *See Khoros v. Lenovo (U.S.), Inc., LLC*, No. 3:20-cv-03399-WHO, 2020 WL 12655516, at *3 (N.D. Cal. Oct. 5, 2020); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

## V. **PLAINTIFFS' CIPA CLAIM FAILS BECAUSE PLAINTIFFS FAIL TO PLEAD FACTS SHOWING (A) SHARP KNOWINGLY AIDED AND ABETTED A CRIMINAL ACT; (B) "CONTENT" INFORMATION WAS DISCLOSED TO META; AND (C) AN INTERCEPTION OCCURRED "IN TRANSIT"**

### A. **The Complaint Is Devoid Of Facts Establishing Sharp Aided And Abetted Any Violation By Meta Of Penal Code § 631(a)**

Plaintiffs concede that their only purported basis for holding Sharp liable under Penal Code § 631(a) is that Sharp aided and abetted Meta's violation of Section 631(a). *See, e.g.,* Opp. at 12:5 ("Sharp opened the valve"). Plaintiffs' threadbare allegations are insufficient to show the intent and conduct necessary for aiding and abetting by any standard, much less under Penal Code § 31. *See* Mot. at 25:19-26 (citing cases holding that plaintiffs must establish at least (a) defendant's knowledge of the allegedly unlawful intent to intercept Plaintiff's alleged communications; (b) an intent to help another intercept any alleged communication; (c) at least the same mental state as the interceptor; (d) the "full extent of [the interceptor's] criminal

purpose" and aid or encouragement with the intent or purpose of facilitating and alleged commission of a crime; and (e) conduct that assisted the achievement of the alleged crime, taking into account factors like presence at the scene of the crime, companionship, and conduct before and after the offense).

Plaintiffs have not pled facts showing Sharp knew about any alleged intent by Meta to intercept their alleged communications, harbored an intent to help Meta intercept any alleged communications, had the same mental state as Meta, knew Meta's alleged criminal purpose and aided or encouraged Meta with the intent or purpose of facilitating Meta's alleged commission of a crime, or engaged in conduct that assisted Meta's achievement of an alleged crime. Mot. at 27:6-12. Plaintiffs therefore have failed to demonstrate any aider and abettor liability, and their § 631(a) claim against Sharp should be dismissed. In short, Plaintiffs have the burden to plead, and ultimately prove, that Sharp knowingly aided and abetted something it *knew* was a criminal act. It is not sufficient to plead that Sharp aided and abetted a transmission of information that Plaintiffs now claim constitutes a violation of a criminal statute.

Plaintiffs argue that that Penal Code § 31 does not apply to Plaintiffs' Section 631(a) claim because Section 631(a) also includes the following language: "*agrees with*, *employs*, *or conspires* . . ." Plaintiffs fail to explain or cite any case showing how these additional terms differ from, or are not covered by, the aiding and abetting framework. They are actually one and the same because, not only does each term denote some form of aiding and abetting, but also (a) "The analysis for a violation of CIPA is the same as that under the federal Wiretap Act" (*Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020)); (b) "Procuring" a violation of the Wiretap Act is equivalent to "aiding and abetting" it (*Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1268–69 (N.D. Cal. 2001))[4]; and (c) Plaintiffs specifically

---

[4] *See also Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246-47 (10th Cir. 2012) (describing "procuring" as "aiding and abetting").

characterize Sharp's alleged wrongdoing as "***procuring*** Meta to automatically and secretly spy on, and intercept its' patients sensitive health information . . .," and/or by "facilitating this wiretap . . ." (Compl. ¶¶ 157-58) (emphasis added). Plaintiffs cannot now turn to semantics to try to avoid the heightened standard for aiding and abetting under the Penal Code.

Plaintiffs also rely upon three district court cases that contain *no* discussion of the standards required for aiding and abetting liability under Section 631(a). *See Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-CV, 2019 WL 5485330, at *1-2 (N.D. Cal. Oct. 23, 2019); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 509, 521 (C.D. Cal. 2021); *In re: Lenovo Adware Litig.*, No. 15-md-02624-RMW, 2016 WL 6277245, at *1-*3 (N.D. Cal. Oct. 27, 2016).[5] Whether Section 31 applies to the CIPA claim is not ultimately the issue. Rather, case law applying Section 31 provides the *analysis* for how aider and abettor liability must be handled under the Penal Code. *See* Mot. at 15:4-20. There is no reason why aiding and abetting liability under Section 631(a) of the CIPA, which also lives in the Penal Code, should require any less than what is required to establish aiding and abetting liability under Section 31.

Because the CIPA is a *criminal* statute, more is needed for aiding and abetting liability beyond the overly simple analysis that merely putting common software tools on a public-facing website is enough to create both criminal and civil liability for aiding and abetting a software developer. To allow Plaintiffs to state a claim for aiding and abetting Meta merely because Sharp allegedly installed the Meta Pixel on a public website would lead to absurd results and create shockwaves for the owners of the millions of websites that have used the Meta Pixel.

---

[5] Plaintiffs also cite to a state trial court decision that does not analyze the standards required for aiding and abetting liability under § 631(a). *See* Opp. at 15:16-18.

### B. **Plaintiffs Do Not Plead Facts Showing That "Content Information" Was Disclosed to Meta**

Plaintiffs try to blur the very bright line between online browsing information and actual patient records or actual patient-doctor communications. To that end, Plaintiffs fail to allege facts showing that the substantive contents of their (or anyone's) communications have ever been transmitted to Meta. Plaintiffs' parroting the legal conclusion that "medical information" and "sensitive health and personal information" may as a general matter be transmitted to Facebook as a result of the Pixel technology, without alleging any facts in support of the conclusion that their own "sensitive health and personal information" was transmitted (*see, e.g.*, Compl. ¶¶ 83, 95, 140, 159-163), is insufficient as a matter of law.

*In re Zynga Privacy Litig.*, 750 F.3d 1098 (9th Cir. 2014) is on point and dispels Plaintiffs' argument that public website URLs are treated differently than FIDs (Facebook IDs). In *Zynga*, the court explained a URL could disclose that a person viewed the "page of a gay support group," yet held that such URLs "function[] like an 'address,'" not "contents" of a communication. *Id.* at 1107. Accordingly, Plaintiffs' bareboned allegations regarding browsing data on Sharp's public website do not constitute "content information" under the CIPA.

### C. **No Interception In Transit Has Occurred**

Plaintiffs do not—and cannot—plead facts showing that Meta intercepted any communication while it was "in transit." *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 951 (N.D. Cal. 2017), aff'd, 745 F. App'x 8, 9 (9th Cir. 2018). The Court should follow *Smith* because it is a published, directly-on-point federal court decision. Plaintiffs do not cite to a single published federal court decision that is on point.

### VI. **CONCLUSION**

For the foregoing reasons, Sharp respectfully asks the Court to grant its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

Plaintiffs seek leave to amend (Opp. at 25:12-20), but Sharp respectfully asks the Court to dismiss at least the breach of fiduciary duty, invasion of privacy, and CIPA claims without leave to amend. Because those claims fail as a matter of law, amending them would be futile.

Respectfully Submitted,

Dated: May 24, 2023

**BAKER & HOSTETLER LLP**

By: */s/Teresa C. Chow*
       TERESA C. CHOW

*Attorneys for Defendant*
SHARP HEALTHCARE