1  TERESA C. CHOW (SBN 237694)
   *tchow@bakerlaw.com*
2  ALEXANDER VITRUK (SBN 315756)
   *avitruk@bakerlaw.com*
3  **BAKER & HOSTETLER LLP**
   11601 Wilshire Boulevard, Suite 1400
4  Los Angeles, CA 90025-0509
   Telephone:  310.820.8800
5  Facsimile:   310.820.8859

6  PAUL G. KARLSGODT (*admitted pro hac vice*)
   *pkarlsgodt@bakerlaw.com*
7  **BAKER & HOSTETLER LLP**
   1801 California Street Suite 4400
8  Denver, CO 80202
   Telephone:  303.861.0600
9  Facsimile:   303.861.7805

10 *Attorneys for Defendant*
   SHARP HEALTHCARE
11

12

13                **UNITED STATES DISTRICT COURT**

14               **SOUTHERN DISTRICT OF CALIFORNIA**

15 HANNAH COUSIN, LINDA CAMUS,        Case No.: 3:22-cv-02040-MMA-DDL
   and EDWARD BARBAT individually
16 and on behalf of all others similarly   **DEFENDANT SHARP**
   situated,                          **HEALTHCARE'S NOTICE OF**
17                                     **MOTION AND MOTION TO**
                   Plaintiffs,         **DISMISS AMENDED COMPLAINT**
18
19       v.
                                       Date:          October 23, 2023
20 SHARP HEALTHCARE,                   Time:          2:30 p.m.
                                       Location:      Ctrm 3C
                   Defendant.          Judge:         Hon. Michael M.
21                                                     Anello
22                                     Action Filed:  11/22/2022
                                       Consolidated
23                                     Compl. Filed:  03/03/2023
                                       Amended
24                                     Consolidated
                                       Compl. Filed:  08/02/2023
25
26
27
28

                              1

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1  **TO THE HONORABLE COURT, AND TO PLAINTIFFS AND THEIR**
2  **COUNSEL OF RECORD HEREIN:**

3  **NOTICE IS HEREBY GIVEN** that on October 23, 2023 at 2:30 p.m., in
4  Courtroom 3C, 3rd Floor of the above-entitled Court located at 221 West Broadway,
5  San Diego, CA 92102, Defendant SHARP HEALTHCARE ("Defendant") will and
6  hereby does move the Court to dismiss the above-captioned action pursuant to
7  Federal Rule of Civil Procedure 12(b)(6). This Motion is made pursuant to Federal
8  Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiffs fail to state a claim
9  against Defendant upon which relief can be granted.

10  This Motion is based upon this Notice, the accompanying Memorandum of
11  Points and Authorities, all pleadings, papers, and records on file in this Action, and
12  such other oral argument and documentary evidence as may be presented at or before
13  the time of adjudication of this Motion.

14  Dated: August 23, 2023          **BAKER & HOSTETLER LLP**

16                         By:  */s/Teresa C. Chow*
                              TERESA C. CHOW

18                         *Attorneys for Defendant*
                          SHARP HEALTHCARE

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

2

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION .......................................................................... 7

II. ORDER GRANTING SHARP'S PRIOR MOTION TO DISMISS .............. 8

III. FIRST AMENDED CONSOLIDATED COMPLAINT ............................ 11

IV. LEGAL STANDARD .................................................................. 13

V. ARGUMENTS AND AUTHORITIES .......................................... 14

    A. All of Plaintiffs' Claims Should be Dismissed Since Each Claim is Based on Alleged Disclosure of Public Website Browsing Activity. 14

    B. Plaintiffs' Invasion of Privacy – Intrusion Upon Seclusion Claim (Count I) Still Fails to Allege "Highly Offensive" Conduct. ............. 15

    C. Plaintiffs' Constitutional Invasion of Privacy Claim (Count II) Fails for the Same Reason as the Common Law Invasion of Privacy Claim, and Separately, For Lack of Money Damages. ........ 18

    D. Plaintiffs' CMIA Claim (Count III) Remains Deficient Because Plaintiffs Do Not Allege Facts Showing Medical Information was Transmitted, was Viewed, or Accessed by Anyone at Meta. ............. 18

        1. Plaintiffs Still Fail to Allege Facts Showing any Medical Information or Medical Records have been Transmitted. ........ 19

        2. Plaintiffs Still Fail to Allege Facts Showing that Anyone at Meta Actually Viewed or Accessed any Medical Information. ................................................................... 21

    E. Plaintiffs Fail to State a CIPA Claim (Count IV). ............................ 23

VI. CONCLUSION .......................................................................... 25

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page(s)**

**Federal**

*Allen v. Cnty. Of Sonoma*,
  No. 17-cv-00448-YGR, 2017 WL 3593340 (N.D. Cal. Aug. 18,
  2017) ................................................................................................... 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................... 13, 16, 23

*Bates v. Arata*,
  No. C 05-3383 SI, 2008 WL 820578 (N.D. Cal. Mar. 26, 2008) ..................... 18

*Beckington v. Am. Airlines, Inc.*,
  926 F.3d 595 (9th Cir. 2019) ................................................................. 13

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................... 13, 16

*Blanco v. Cnty. of Kings*,
  142 F. Supp. 3d 986 (E.D. Cal. 2015) ................................................. 18

*Depot, Inc. v. Caring for Montanans, Inc.*,
  915 F.3d 643 (9th Cir. 2019) ................................................................. 13

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 608 (9th Cir. 2020) ................................................................. 24

*In re Google, Inc. Privacy Policy Litig.*
  58 F. Supp. 3d 968 (N.D. Cal. 2014), .................................................. 16

*In re iPhone Application Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) ................................................. 16

*Kurowski v. Rush System for Health*,
  Case No. 22 C 5380, 2023 WL 2349606 (N.D. Ill. Mar. 3, 2023) ......... 17, 20, 21

*Lopez v. Apple, Inc.*,
  519 F. Supp. 3d 672 (N.D. Cal. 2021) ................................................. 18

*Loss v. Immersion Corp.*,
  762 F.3d 880 (9th Cir. 2014) ................................................................. 13

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

4

*Low v. LinkedIn Corp.*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012)........................................................15, 16

*Moore v. Rodriguez*,
  No. 20-cv-01481-BAS-BGS, 2021 WL 2222590 (S.D. Cal. June 2,
  2021)........................................................................................................................18

*Myoungchul Shin v. Uni-Caps, LLC*,
  No.SA CV 14-1387-JFW, 2014 WL 12853912 (C.D. Cal. Dec. 17,
  2014)........................................................................................................................23

*Smith v. Facebook, Inc.*,
  262 F. Supp. 3d 943 (N.D. Cal. 2017), aff'd, 745 F. App'x 8 (9th
  Cir. 2018)..................................................................................9, 14, 19, 20

*Solis v. City of Fresno*,
  No. 1:11-CV-00053 AWI GSA, 2012 WL 868681 (E.D. Cal. Mar.
  13, 2012)..................................................................................................................23

*Wilson v. Rater8, LLC*,
  No. 20-cv-1515-DMS-LL, 2021 WL 4865930 (S.D. Cal. Oct. 18,
  2021)........................................................................................................................20

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009)..................................................................................13

*In re Zynga Privacy Litig.*,
  750 F.3d 1098 (9th Cir. 2014)................................................................................24

**State**

*Barbour v. John Muir Health*,
  No. C22-01692, 2023 WL 2618967 (Cal. Super. Ct. Jan. 5, 2023)....................22

*Clausing v. S.F. Unified Sch. Dist.*,
  221 Cal. App. 3d 1224 (1990)................................................................................18

*Eisenhower Med. Ctr. v. Super. Ct.*,
  226 Cal. App. 4th 430 (2014)................................................................................20

*Hernandez v. Hillsides, Inc.*,
  47 Cal. 4th 272 (2009)............................................................................................15

*Regents of Univ. Cal. v. Super. Ct.*,
  220 Cal. App. 4th 549 (2013)................................................................................21

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

5

*Sutter Health v. Super. Ct.*,
    227 Cal. App. 4th 1546 (2014).................................................................21

**Statutes**

Cal. Civ. Code § 56.................................................................*passim*

Cal. Pen. Code § 630 ........................................................................12

Cal. Pen. Code § 631 .....................................................................8, 23

California Invasion of Privacy Act.......................................12, 23, 24, 25

The Confidentiality of Medical Information Act ................................*passim*

HIPAA ..............................................................................................11

**Rules**

Fed. R. Civ. P. 12(b)(6) ..............................................................7, 8, 13

Fed. Rule Civ. Proc. 8(a)(2) ..............................................................23

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

6

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## MEMORANDUM OF POINTS & AUTHORITIES

Defendant Sharp Healthcare ("Sharp") respectfully submits this Memorandum of Points and Authorities in support of its Motion to Dismiss Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).

## I.   INTRODUCTION

Sharp is a nonprofit corporation that owns and operates Sharp Memorial Hospital in San Diego, California. This case arises from the alleged embedding of a commonly used analytics and advertising technology called the Meta Pixel on Sharp's *public-facing website,* www.sharp.com. Plaintiffs allege that Sharp disclosed its patients' data from the public-facing website, without their consent, to Meta Platforms, Inc. ("Meta").

In granting Sharp's motion to dismiss Plaintiffs' original consolidated complaint, the Court explained that Plaintiffs cannot rely on conclusions in any amended complaint; they must rather plead facts showing how their "browsing activity" possibly resulted in a disclosure of sensitive medical information. *See* Dkt. 20 at 5:26-6:15. And the Court made clear:

> ***"Plaintiffs cannot maintain their claims based upon the theory that Defendant's sharing of their <u>browsing activity, collected on its publicly facing website</u>, is a disclosure of their sensitive medical information."***

*Id.* at 6:13-15 (emphasis added).

In their amended pleading, Plaintiffs only added allegations regarding their browsing activities on Sharp's publicly facing website.[1] *See* Dkt. 23 at ¶¶ 70-91. Plaintiffs therefore cannot maintain their claims, as the Court previously explained. For this reason, and because further amendment would be futile, Plaintiffs' First Amended Consolidated Complaint should be dismissed *without leave to amend*.

---

[1] Plaintiffs' other changes are legally inconsequential—they dropped one named plaintiff and one cause of action, and added general allegations about the Pixel and background information such as FTC statements and online article citations.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Notably, Plaintiffs still do *not*—and cannot—allege that the Pixel was installed in Sharp's secure patient portal, an online platform that allows patients to access portions of their health information. The distinction between the public-facing website and the patient portal is critical, as the Court recognized in its Order Granting [Sharp's] Motion to Dismiss. *See* Dkt. 20 at 6:13-15; *id*. at 6:27-7:6.

More specifically, and consistent with the Court's Order, Plaintiffs' First Amended Consolidated Complaint should be dismissed for failure to state a claim under Rule 12(b)(6), because Plaintiffs have still failed to allege facts sufficient to plausibly satisfy the elements of each of their four (4) remaining claims.

The invasion of privacy–intrusion upon seclusion claim still fails because Plaintiffs fail to plead facts showing that Sharp engaged in any "highly offensive" conduct by installing commonly used advertising technologies on its public website.

Plaintiffs' invasion of privacy–California Constitution claim still fails for the same reason their invasion of privacy–intrusion upon seclusion claim fails, and because money damages are unavailable.

The California Confidentiality of Medical Information Act ("CMIA"), Section 56 *et seq*. claim still fails because (a) Plaintiffs fail to allege facts showing any medical information or medical records have been transmitted; and (b) Plaintiffs fail to allege facts showing that anyone at Meta actually viewed any medical information.

The California Invasion of Privacy Act, Cal. Pen. Code § 631 ("CIPA") claim still fails because Plaintiffs do not allege facts showing that the "contents" of their alleged communications were intercepted and transmitted to Meta.

Accordingly, Sharp respectfully moves the Court to dismiss Plaintiffs' Consolidated Complaint *without leave to amend* under Rule 12(b)(6).

## II.    <u>ORDER GRANTING SHARP'S PRIOR MOTION TO DISMISS</u>

As the Court explained in its July 12, 2023, Order Granting Sharp's Motion to Dismiss, "Plaintiffs' overarching theory of their case, underlying all claims, is that Defendant collected patients' personal and sensitive medical information on Sharp's

8

website and that this information was then improperly shared with Meta without patients' consent." Dkt. 20 at 5:8-10. The Court then identified four (4) threshold reasons why "Plaintiffs' theory of their case" was implausible as pled:

**First**, the Court held that Plaintiffs relied on conclusions, not well-pled facts showing that Sharp disclosed to Meta their sensitive medical information. *Id*. at 5:17-25. "Plaintiffs fail to factually support their contention that these activities took place. Plaintiffs also fail to allege that these activities took place on a page of Sharp's website where Meta Pixel was embedded. Furthermore, Plaintiffs do not explain what information they provided to Defendant." *Id*. at 5:21-24.

**Second**, the Court held that Plaintiffs' allegation that "disclosure of their browsing activity resulted in a disclosure of sensitive medical information," was "unsupported factually." *Id*. at 5:26-28. But even if Plaintiffs were to provide facts regarding "what information they each provided to" Sharp, "***their claims, to the extent they are based on browsing activity, are subject to dismissal***." *Id*. at 6:3-4. This "type of data collection" does ***not*** constitute "Protected Health Information," and thus "***Plaintiffs cannot maintain their claims based upon the theory that Defendant's sharing of their browsing activity, collected on its publicly facing website, is a disclosure of their sensitive medical information.***" *Id*. at 6:3-15.

**Third**, Plaintiffs' theory that Sharp disclosed sensitive information "collected during the appointment booking function on Sharp's [public facing] website" was devoid of facts showing that Plaintiffs used the "book appointment" button or a direct link to call a doctor's office. *Id*. at 6:16-27. Plaintiffs also "fail[ed] to allege that these webpage interactions took them to a patient portal or otherwise plausibly conveyed their patient status," the Court held, as it rightly distinguished between "[n]avigating or logging onto a healthcare provider's patient portal" and "the general browsing contemplated in *Smith* [*Smith v. Facebook, Inc*., 262 F. Supp. 3d 943, 954–55 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018)]." *Id*. at 6:27-7:4.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

***Fourth***, Plaintiffs' allegations regarding Sharp's alleged use of Meta Pixel on the appointment scheduling page was "utterly devoid of factual enhancement. Plaintiffs do not explain what personal or health information they entered on the webpage, which was then subsequently shared with Meta." *Id*. at 7:16-18.

As for each asserted claim, the Court held:

1.   Plaintiffs' first cause of action for breach of fiduciary duty failed for lack of a cognizable duty. *Id*. at 8:20-9:4.

2.   Plaintiffs' second cause of action for common law invasion of privacy (intrusion upon seclusion) failed because "disclosing a user's browsing history does not plausibly reach the level of 'highly offensive' conduct . . ." *Id*. at 10:23-25.

3.   Plaintiffs' third cause of action for invasion of privacy under California's Constitution failed for the same reason as the common law privacy claim failed (*id*. at 10:23-25), and because monetary damages are not available (*id*. at 12:15-13:1).

4.   Plaintiffs' fourth cause of action for a violation of the CMIA failed for (a) failure to "provide sufficient facts to support the claim that their medical information was disclosed by Sharp" (*id*. at 14:1-3); and (b) failure to plead sufficient facts showing that "their medical information was viewed or otherwise accessed by Meta" (*id*. at 14:13-14; *see also id*. at 14:15-15:15).

5.   Plaintiffs' fifth cause of action for a violation of the CIPA was dismissed for failure to establish "sufficient factual support to plausibly claim their content was intercepted by Meta as a result of installing Meta Pixel on Sharp's webpage." *Id*. at 16:27-17:2.

The Court afforded Plaintiffs leave to amend but cautioned that any claim not re-alleged in the amended complaint will be considered waived. *Id*. at 18:12-13.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## III.   FIRST AMENDED CONSOLIDATED COMPLAINT

Nothing in Plaintiffs' amended pleading cures the core deficiencies identified in the Court's July 12, 2023 Order. Most importantly, the amended consolidated complaint still involves ***only browsing activities on Sharp's publicly facing website***, not the secure patient portal that allows patients to access portions of their health information. *See generally* Dkt. 23. In fact, Plaintiffs even admit that Sharp's public "website and related subpages . . . do not require patients to log in before they can access the website and related subpages." *Id.* at ¶ 42.[2]

The other changes may be categorized as follows:

(1)    Plaintiffs have dropped one named plaintiff, Deanna Franklin-Pittman, and their breach of fiduciary duty claim, which is now waived. Dkt. 20 at 18:12-13.

(2)    Plaintiffs have added a series of *non-factual* citations to FTC statements, online articles, and a Health and Human Services' Health Information Privacy Bulletin regarding HIPAA, which is not at issue, and which does not allow for a private right of action. Dkt. 23 at ¶¶ 1, 4, 29, 35, 36, 98, 101-104.

(3)    Plaintiffs have added five (5) *non-factual* paragraphs concluding that Sharp violated "industry standards" under the "American Medical Association's Code of Medical Ethics." *Id.* at ¶¶ 107-111.

(4)    Plaintiffs have added generalized and conclusory allegations regarding Meta and the Meta Pixel. *Id.* at ¶¶ 29, 36, 174. In Paragraph 29, Plaintiffs *conclude* that, because allegedly "Meta is able to provide its marketing partners with direct and detailed insight into individuals' activities," Meta must have "regularly viewed and used the sensitive health information collected by the Meta Pixel in connection with providing targeted advertising."

---

[2] It is unclear what Plaintiffs actually mean by "subpages," but the First Amended Complaint alleges no facts regarding the secure patient portal, and therefore only concerns the Sharp public website.

(5)    Plaintiffs Camus and Barbat (but not Plaintiff Cousin) have added allegations regarding their own medical circumstances (*id*. at ¶¶ 76, 85), and each Plaintiff has alleged more information regarding ***their browsing activities on the Sharp public website only*** (*id*. at ¶¶ 71-72, 76-81, 85-88). Only Plaintiff Camus has alleged booking *one appointment* for a common medical condition with a doctor on "Sharp's website and related subpages." *Id*. at ¶ 81. Camus does not allege that such alleged appointment booking took her to a patient portal. *Id*.

Plaintiffs otherwise allege, as they did in their original complaint, that code on Sharp's public website permits certain information to be transmitted to Meta through the Meta Pixel. *Id*. ¶¶ 3-5. Plaintiffs allege that, "[t]hrough the Meta Pixel, Sharp shared its patients' identities and online activity, including information and search results related to their private medical treatment." *Id.* ¶ 44. Plaintiffs also discuss an alleged scenario of "when a patient enters www.sharp.com/hospitals/memorial and searches for a doctor" (*id.* ¶ 45), providing hypothetical examples of information that allegedly ***could*** be disclosed to Facebook (*id.* ¶¶ 45-68). Plaintiffs further allege that Meta can identify hypothetical users of Sharp's website through the use of Facebook ID, cookies, and browser identifier. *Id*. ¶¶ 52-66.

Plaintiffs still freely use the word "communications" throughout the First Amended Consolidated Complaint, giving the false impression that actual patient-doctor communications could theoretically be shared with Meta. Tellingly, Plaintiffs do not go so far as to allege that the contents of any of their patient-doctor communications have ever been disclosed to Meta. Again, and at most, Plaintiffs allege merely that information transmitted identifies the pages and certain (URL) information from those pages, ***i.e*., browsing activity**, on Sharp's public website that a hypothetical user visited. *Id*. ¶¶ 45-68.

Plaintiffs now attempt to assert four (4) causes of action only: (1) invasion of privacy – intrusion upon seclusion; (2) invasion of privacy—violation of California Constitution, Article I, Section 1; (3) violation of CMIA (Cal. Civ. Code § 56 *et seq*.);

12

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

and (4) violation of CIPA (Cal. Pen. Code § 630 *et seq.*). *Id*. at ¶¶ 150-188.

Plaintiffs now seek to represent a putative class of "[a]ll natural persons in California who, within the applicable statute of limitations, visited Sharp's website and/or subpages and had their sensitive health information collected through Meta Pixel." *Id*. at ¶ 140. In apparent disregard of the Court's instruction that public website browsing history is ***not*** actionable, Plaintiffs have broadened their prior class definition, which was comprised of people who allegedly "used the Sharp *scheduling page* and had their personal information collected through Meta Pixel" (*see* Dkt. 1 at ¶ 107 (emphasis added)).

## IV.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal if a complaint fails to state a claim upon which relief can be granted. To survive a motion to dismiss, the complaint "must contain sufficient 'well-pleaded, nonconclusory factual allegation[s],' accepted as true, to state 'a plausible claim for relief.'" *Beckington v. Am. Airlines*, *Inc.*, 926 F.3d 595, 604 (9th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679-80 (2009)). Factual allegations must be enough to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal is appropriate when the complaint lacks a "cognizable legal theory" or sufficient factual allegations to "support a cognizable legal theory." *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 652-53 (9th Cir. 2019).

*Iqbal* makes clear, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 664 (internal citation omitted). Plausibly "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

Moreover, "[w]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite, particularity to its claims, '[t]he district court's discretion to deny leave to amend is particularly broad.'" *Zucco*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (internal citation omitted); *see also Loss v. Immersion Corp.*, 762 F.3d 880, 890-91 (9th Cir. 2014) (affirming district court's dismissal of plaintiff's amended complaint without leave to amend because plaintiff failed to correct the deficiencies identified in his original complaint).

## V.   ARGUMENTS AND AUTHORITIES

### A.   All of Plaintiffs' Claims Should be Dismissed Since Each Claim is Based on Alleged Disclosure of Public Website Browsing Activity.

The Court could not have been clearer in its July 12, 2023, Order Granting Sharp's Motion to Dismiss:

> *"Plaintiffs cannot maintain their claims based upon the theory that Defendant's sharing of their browsing activity, collected on its publicly facing website, is a disclosure of their sensitive medical information."*

*Id.* at 6:13-15 (emphasis added). In so ruling, the Court rightly relied on *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954–55 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018), which stands for the unremarkable holding that mere collection of *public website browsing data* is not considered "Protected Health Information" since "nothing about [the] information relates specifically to Plaintiffs' health" and the information is "general health information that is accessible to the public at large." *Id.*; Dkt. 23 at 6:8-12.

As noted, the First Amended Consolidated Complaint still involves ***only browsing activities on Sharp's publicly facing website***, not the secure patient portal. *See generally* Dkt. 23. Plaintiffs even amended their proposed class definition to cover public website browsing activities, in apparent disregard of the Court's holding. *Id.* at ¶ 140 (now applying to people who merely "visited" Sharp's public website). Because public website browsing activities are not actionable, each of Plaintiffs' claims should be dismissed without leave to amend, consistent with the Court's July 12, 2023, Order.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

14

Plaintiffs may point to their new allegations at Paragraphs 70-91, which purport to draw attention to their alleged medical circumstances, but those allegations plainly concern public website browsing activities only. *See* Dkt. 23 at ¶¶ 71-72, 76-81, 85-88. Accordingly, those allegations are not actionable.

## B.   Plaintiffs' Invasion of Privacy – Intrusion Upon Seclusion Claim (Count I) Still Fails to Allege "Highly Offensive" Conduct.

In order to state a common law privacy claim, Plaintiffs must plead facts showing that any alleged invasion of privacy was "highly offensive to a reasonable person." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009). Courts are required to consider all-inclusive "factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *Id.* at 293. Moreover, California district courts have recognized the "high bar for an invasion of privacy claim." *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) ("The California Constitution and the common law set a high bar for an invasion of privacy claim.").

To that end, in its July 12, 2023 Order dismissing Plaintiffs' common law privacy claim, the Court held:

> Plaintiffs postulate that Sharp disclosed its patients' information to Meta and that the data could be de-anonymized through the matching of Facebook IDs. But as discussed above, it is ***not clear that anyone has actually done so, or what information, precisely, Plaintiffs shared with Sharp that was subsequently obtained by Meta***.

*See* Dkt. 23 at 10:18-21 (emphasis added). As a threshold matter, Plaintiffs do not allege *facts* showing that their alleged data was "de-anonymized through the matching of Facebook IDs." *Id*. The claim should therefore be dismissed.

Moreover, Plaintiffs fail to state *facts* showing that "anyone" at Meta even viewed or accessed their personal information (as opposed to any disclosed data being subject to an algorithm). In Paragraph 29, Plaintiffs simply *conclude* that

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

15

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

(a) Meta allegedly "provide[s] its marketing partners with direct and detailed insight into individuals' activities"; (b) because Meta is allegedly "able" to provide such "direct and detailed insight" (whatever that means); then (c) Meta must have "regularly viewed and used the sensitive health information collected by the Meta Pixel in connection with providing targeted advertising." Dkt. 23 at ¶ 29. This series of allegations are not well-pled facts from which a reasonable inference may be drawn, but rather a conclusion divisible into three underlying layers of speculation. *Iqbal*, 556 U.S. at 686 (explaining "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context."); *see also Twombly*, 550 U.S. at 544 ("[F]actual allegations must be enough to raise a right to relief above the speculative level."). As such, Paragraph 29 does not save Plaintiffs' invasion of privacy claim.

Regardless, the Court further held in its July 12, 2023 Order:

> "[I]t is clear that even if Plaintiffs had alleged all these facts sufficiently, ***disclosing a user's browsing history does not plausibly reach the level of "highly offensive" conduct under either common law or the California Constitution.***"

Dkt. 20 at 10:22-24 (emphasis added). The Court thus granted Sharp's motion to dismiss the invasion of privacy claims "to the extent they are based upon browsing activity." *Id*. at 11:13-14.[3] Because Plaintiffs still allege, at best, disclosures of their browsing activity only, their common law privacy claim must fail. *Id.* This claim should therefore be dismissed without leave to amend.

---

[3] In its ruling, the Court relied on directly on-point authorities such as *In re Google, Inc. Privacy Policy Litig.*, where the Northern District of California found no highly offensive conduct when plaintiffs alleged that Google surreptitiously tracked their browsing data while using Google's services. 58 F. Supp. 3d 968, 987–88 (N.D. Cal. 2014). *See also Low*, 900 F. Supp. 2d at 1025 (LinkedIn's disclosure of users' browser history to third parties was not highly offensive); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1060, 1063 (N.D. Cal. 2012) (disclosures of unique device identification number, personal data, and geolocation information without consent were not an egregious breach of social norms).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

No other conduct alleged in Plaintiffs' amended complaint meets the high bar of "highly offensive conduct." Although the Court separately held that "Plaintiffs have alleged that disclosure of their sensitive health information on Sharp's **appointment scheduling page** is 'highly offensive' sufficient to withstand dismissal" (Dkt. 20 at 12:1-4 (emphasis added)), Plaintiffs Cousin and Barbat do **not** allege that they scheduled any appointments on the Sharp website. *See* Dkt. 23 at ¶¶ 70-74, 84-91. Only Plaintiff Camus alleges that she booked *one appointment* for a common medical condition on the Sharp public website. *Id.* at ¶ 81. But Camus fails to allege what "sensitive health information" from her alleged booking, if any, was actually disclosed to Meta.[4] Further, even if disclosed, disclosure of the common medical condition for which Camus booked an appointment cannot plausibly reach the high bar of being "highly offensive to a reasonable person."

On that note, the *Kurowski* court in the Northern District of Illinois explained that a similarly situated patient's alleged online communications were "not protected private health information," even if they "identifie[d] an individual patient by name." *Kurowski v. Rush System for Health*, Case No. 22 C 5380, 2023 WL 2349606 at **6, 9 (N.D. Ill. Mar. 3, 2023). On this separate ground, *Kurowski* granted the healthcare provider's motion to dismiss the plaintiff's intrusion upon seclusion claim. *Id.* at *9; *id.* at *5 ("Kurowski has not alleged sufficient facts, however, to support an inference that Rush disclosed its patients' individually identifiable health information . . ."); *id.* at *6 ("Kurowski fails to allege the disclosure of any information related to the provision of treatment to her or other similarly situated Rush patients.").

For each of the above stated reasons, Plaintiffs have not pled facts sufficient to state an intrusion upon seclusion claim. The claim should be dismissed *with prejudice*.

---

[4] Aside from this one appointment alleged in this one Paragraph 81, the remainder of Camus' allegations concern nonactionable public website browsing activities only. *See* Dkt. 23 at ¶¶ 76-80, 82-83.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**C.**   **Plaintiffs' Constitutional Invasion of Privacy Claim (Count II) Fails for the Same Reason as the Common Law Invasion of Privacy Claim, and Separately, For Lack of Money Damages.**

Plaintiffs' constitutional privacy claim is "functionally identical" to their common law invasion of privacy claim, both as a matter of law and as pled. *See, e.g., Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 689 (N.D. Cal. 2021) ("[T]he California Supreme Court has moved toward treating the tort and constitutional privacy inquiries as functionally identical, although the claims do continue to exist as separate claims with technically distinct elements."). Indeed, both claims are based on the same allegations. Dkt. 23 at ¶¶ 150-167. Moreover, the Court in its July 12, 2023 Order considered—and dismissed—both claims together. Dkt. 20 at 10:9-11:14 (dismissing both claims for failure to allege "highly offensive" conduct as to alleged browsing activity). Thus, the Constitutional claim should fail for the same reasons as the common law claim and should also be dismissed without leave to amend.

Separately, Plaintiffs bring the same claim for money damages under the California Constitution (*see* Dkt. 23 at ¶ 167) that the Court already rejected as a matter of law in its July 12, 2023, Order. *See* Dkt. 20 at 12:21-13:1 (holding money damages are not available under Article 1, Section 1 of the California Constitution).[5] Plaintiff's claim for money damages should be dismissed without leave to amend.

**D.**   **Plaintiffs' CMIA Claim (Count III) Remains Deficient Because Plaintiffs Do Not Allege Facts Showing Medical Information was Transmitted, was Viewed, or Accessed by Anyone at Meta.**

Plaintiffs continue to allege Sharp has violated Section 56 *et seq*. of the CMIA. Section 56.10 states in pertinent part that "[n]o provider of health care … shall

---

[5] *Moore v. Rodriguez*, No. 20-cv-01481-BAS-BGS, 2021 WL 2222590 at *20 (S.D. Cal. June 2, 2021); *Clausing v. S.F. Unified Sch. Dist.*, 221 Cal. App. 3d 1224, 1238 (1990); *Blanco v. Cnty. of Kings*, 142 F. Supp. 3d 986, 1000 (E.D. Cal. 2015); *Bates v. Arata*, No. C 05-3383 SI, 2008 WL 820578, at *4 (N.D. Cal. Mar. 26, 2008); *Allen v. Cnty. Of Sonoma*, No. 17-cv-00448-YGR, 2017 WL 3593340, at *5 (N.D. Cal. Aug. 18, 2017).

18

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

disclose *medical information* regarding a patient of the provider of health care … without first obtaining an authorization …" (emphasis added). Sections 56.06 and 56.101 concern maintenance and storage of "medical information" or "medical records." Cal. Civ. Code §§ 56.06, 56.101.

In its July 12, 2023 Order, the Court dismissed Plaintiffs' CMIA claim on two independent grounds: (1) Plaintiffs failed to provide sufficient facts to support the claim that their medical information was disclosed by Sharp, and (2) Plaintiffs failed to allege facts showing that their medical information was viewed or accessed by anyone at Meta. *See* Dkt. 20 at 13:15-15:15.

As explained below, the amended CMIA claim suffers from the same infirmities and should be dismissed without leave to amend.

### 1. *Plaintiffs Still Fail to Allege Facts Showing any Medical Information or Medical Records have been Transmitted.*

Plaintiffs' CMIA claim should be dismissed because they have still failed to plead *facts* sufficient to show that any of their alleged medical information was actually transmitted to Meta. Although Plaintiffs allege more information regarding their medical circumstances (Dkt. 23 at ¶¶ 70-91), they fail to allege what, if any, "medical information" was ever transmitted to Facebook. This is insufficient to state a claim under the CMIA. *See Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954-55 (N.D. Cal. 2017), aff'd, 745 F. App'x 8, 9 (9th Cir. 2018) (holding that disclosure to Facebook of browsing history on healthcare providers' public websites, as alleged here, did not disclose protected health information because "[t]hese pages contain general health information that is accessible to the public at large."). "Information available on publicly accessible websites stands in stark contrast to the personally identifiable patient records and medical histories protected by these statutes— information that unequivocally provides a window into an individual's personal medical history." *Id.* Plaintiffs notably fail to allege that the Pixel was installed on the secure patient portal.

1    In fact, the *Smith* court held that the type of information allegedly at issue here

2  is *not* "medical information":

> The URLs at issue … point to pages containing information about
> treatment options for melanoma, information about a specific doctor,
> search results related to the phrase 'intestine transplant,' a wife's blog
> post about her husband's cancer diagnosis, and other publicly available
> medical information. … These pages contain general health
> information that is accessible to the public at large. The same pages are
> available to every computer, tablet, smartphone, or automated crawler
> that sends GET requests to these URLs. Nothing about the URLs, or
> the content of the pages located at those URLs, relates to the past,
> present, or future physical or mental health or condition of an
> individual.

262 F. Supp. 3d at 954–55 (dismissing CMIA claim). The Ninth Circuit affirmed the

*Smith* court, similarly stating: "The data show only that Plaintiffs searched and

viewed publicly available health information that cannot, in and of itself, reveal

details of an individual's health status *or medical information*." *Smith v. Facebook,

Inc.*, 745 Appx. at *9 (unpublished) (emphasis added); *see also Wilson v. Rater8,

LLC*, No. 20-cv-1515-DMS-LL, 2021 WL 4865930, at *1, *5 (S.D. Cal. Oct. 18,

2021) (dismissing plaintiff's CMIA claim because the disclosure of "[p]laintiff's

name, cellular telephone number, treating physician names, medical treatment

appointment information, and medical treatment discharge dates and times" "is

insufficient to allege disclosure of medical information under the CMIA.").

At most, Plaintiffs have alleged the disclosure of the fact that they *may* have

been patients of a hospital affiliated with Sharp. But the "fact that he or she was a

patient is not in itself medical information." *Eisenhower Med. Ctr. v. Super. Ct.*, 226

Cal. App. 4th 430, 436 (2014).

*Kurowski* is again instructive here: "[Plaintiff] fails to allege the disclosure of

any information related to the provision of treatment to her or other similarly situated

Rush patients." 2023 WL 2349606 at *6. "[Plaintiff] has not alleged sufficient facts,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

20

however, to support an inference that Rush disclosed its patients' individually identifiable health information, at least as that term is defined by the statute. . . . Moreover, the hypotheticals provided by Kurowski appear to illustrate only what occurs when an individual—whether a patient or not—clicks on certain areas of Rush's public website." *Id.* at *5. Plaintiffs' similarly insufficient allegations do not establish that any "medical information" was disclosed.

2.    ***Plaintiffs Still Fail to Allege Facts Showing that Anyone at Meta Actually Viewed or Accessed any Medical Information.***

Separately, Plaintiffs continue to allege facts plausibly showing only that the data at issue was channeled through Meta's coding or computer systems. *See, e.g.,* Dkt. 23 at ¶¶ 18-68. This allegation is insufficient to state a claim, as the Court recognized in its July 12, 2023, Order. *See* Dkt. 20 at 14:5-15:15; *accord. Sutter Health v. Super. Ct.*, 227 Cal. App. 4th 1546, 1553 (2014) (no claim under CMIA when there was no allegation that anyone ever actually viewed medical information that was exposed in a data breach); *Regents of Univ. Cal. v. Super. Ct.*, 220 Cal. App. 4th 549, 570 (2013) (finding patient did not state a claim under the CMIA because "she cannot allege her medical records were, in fact, viewed by an unauthorized individual[,] because no one (except perhaps the thief) knows what happened to the encrypted external hard drive and the password for the encrypted information.").

In *Sutter Health*, computers containing medical records were stolen but there was no evidence they were actually viewed. 227 Cal. App. 4th at 1557. The California Court of Appeal explained that "[n]o breach of confidentiality takes place until an unauthorized person views the medical information. . . . [w]ithout an actual breach of confidentiality, the loss of possession is not actionable under section 56.101." *Id*.

In virtually identical circumstances as this case, a California trial court recently dismissed a CMIA claim on the ground that the plaintiffs had not pled facts showing that anyone had actually read any medical information:

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

> [T]he information may be collected, analyzed, and used by a third party for its own benefit, all through the use of computers, without any human actually laying eyes on it. Plaintiffs have not alleged that the information was "actually read" within the meaning of Sutter Health. Plaintiffs conclude that someone must have viewed the data at Facebook in order to compile the datasets for advertisers, the complaint does not specifically allege this. It does allege that the information was used by a third party and used for its own benefit, *i.e.*, for marketing purposes. However, in the absence of allegations that the information was "actually read," Plaintiffs have failed to allege facts sufficient to state a violation of the CMIA.

*Barbour v. John Muir Health*, No. C22-01692, 2023 WL 2618967, at **7-8 (Cal. Super. Ct. Jan. 5, 2023).

Here, there similarly is no allegation that any *person* at Meta (or anywhere else) has ever actually viewed or otherwise accessed Plaintiff's data. Rather, the only *plausible* allegation promoted by Plaintiffs is that they received targeted advertising generated by Meta's computer systems, not an actual person. The CMIA claim should therefore be dismissed on this additional ground.

In dismissing the CMIA claim on July 12, 2023, the Court specifically held:

> Here, a single plaintiff alleges that Sharp shared her data with Meta for use in targeted advertisements. CAC ¶ 10. But this is merely a conclusion without sufficient factual support. ***She does not allege, for example, that she received or was subjected to an increase in any targeted advertisements. And that Meta could collect and view the information of a hypothetical patient does not support Plaintiff's claim***. *Id.* ¶¶ 39–69.

Dkt. 20 at 14:23-28 (emphasis added). Tellingly, such new factual allegations are nowhere to be found in the First Amended Consolidated Complaint.

Instead, Plaintiffs have now added Paragraphs 29 and 174 in a last-ditch effort to avoid dismissal, but those new paragraphs do not save Plaintiffs' CMIA claim. As explained *supra* at 16, Paragraph 29 is comprised of at least three different layers of speculation. *See* Dkt. 23 at ¶ 29. Even the most generous interpretation of Paragraph 29 would show—at best—that it is merely "possible" someone at Meta could have

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

22

viewed a hypothetical plaintiff's data. That is insufficient to state a claim as a matter of law. *Iqbal*, 556 U.S. at 679 ("But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged –but it has not 'show[n]'—'that the pleader is entitled to relief.'") (quoting Fed. Rule Civ. Proc. 8(a)(2)).

Paragraph 174 is even more tenuous as it is based on Paragraph 29 and pled "on information and belief." *See Solis v. City of Fresno*, No. 1:11-CV-00053 AWI GSA, 2012 WL 868681, at *8 (E.D. Cal. Mar. 12, 2012) ("In the post-<u>Twombly</u> and <u>Iqbal</u> era, pleading on information and belief, without more, is insufficient to survive a motion to dismiss for failure to state a claim."); *see also Myoungchul Shin v. Uni-Caps, LLC*, No.SA CV 14-1387-JFW (SHx), 2014 WL 12853912, at *3 (C.D. Cal. Dec. 17, 2014) ("all of Plaintiffs' allegations related to the individual defendants are based on information and belief, and such allegations are insufficient as a matter of law.") (citing cases).

Moreover, both new Paragraphs appear to insinuate that *Meta* subsequently disclosed Plaintiffs' alleged information to other "third parties" (*see, e.g.*, Dkt. 23 at ¶ 174). Sharp is aware of no basis for provider liability under the CMIA for alleged subsequent conduct by a third party. *See, e.g.*, Cal. Civ. Code §§ 56 *et seq*.

### E.   Plaintiffs Fail to State a CIPA Claim (Count IV).

Cal. Pen. Code § 631 (also called CIPA) is California's anti-wiretapping and anti-eavesdropping statute. Pertinent here, Section 631(a)(4) imposes liability on any "person" who "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done" an "interception" of a private communication. *Id*. As the Court explained, "[i]t is clear from Plaintiffs' pleading that they bring their CIPA claim under the fourth clause of California Penal Code § 631(a)" (Dkt. 20 at 16:2-3).

The Court previously dismissed the CIPA claim on the ground that "Plaintiffs do not provide sufficient factual support to plausibly claim their content was

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

intercepted by Meta as a result of installing Meta Pixel on Sharp's webpage." *See* Dkt. 20 at 16:27-17:1. Nothing has changed in Plaintiffs' amended pleading that would support a different outcome. The CIPA claim continues to fail because Plaintiffs still fail to allege facts showing that "contents" of communications are at issue. Plaintiffs again try to blur the bright line between online browsing information and actual patient records or actual patient-doctor communications. To that end, Plaintiffs still fail to allege facts showing that the substantive contents of their communications have ever been transmitted to Meta.

Plaintiffs' reciting the legal conclusion that "medical information," "protected health information," "sensitive personal and health information," or "confidential medical information" are transmitted to Meta, without alleging any facts in support (*see, e.g.*, Dkt. 23 at ¶¶ 4-6, 29, 49, 90, 96, 118, 150), is insufficient as a matter of law. For example, Plaintiffs provide several screenshots of data allegedly transmitted to Meta for hypothetical Sharp.com website users. *See id.* at ¶¶ 45-48. But none of these are two-way communications between a patient and anyone at Sharp. Rather, these are primarily URL record information, as are Plaintiffs' new allegations regarding their medical circumstances. *See* Dkt. 23 at ¶¶ 71-90.

*In re Zynga Privacy Litig.*, 750 F.3d 1098 (9th Cir. 2014) continues to be instructive here. In *Zynga*, the court explained a URL could disclose that a person viewed the "page of a gay support group," yet held that such URLs "function like an 'address,'" not "contents" of a communication. *Id.* at 1107; *see also Facebook Internet Tracking Litig.,* 140 F. Supp. 3d at 935 (a URL sent to Facebook by a user's browser does not qualify as "contents" of a "communication" because it is nothing more than "record information regarding the characteristics of the message that is generated in the course of the communication.") (citation omitted).

In a last-ditch effort to salvage their CIPA claim and the statutory damages that would come with it, Plaintiffs have added *conclusory allegations only*. *See, e.g.*, Dkt. 23 at ¶ 90 (alleging in conclusory fashion that "the sensitive health information

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

intentionally collected and disclosed by the Meta Pixel was content generated through Plaintiffs' and Class Members' use, interaction, and communication with Sharp's website concerns the substance of Plaintiffs' and Class Members' communications Sharp [sic]").

Accordingly, Plaintiffs' bareboned allegations regarding Sharp's public website do not constitute "content information" under the CIPA.

## VI.   **CONCLUSION**

Because further amendment would be futile, Sharp respectfully asks the Court to grant its motion to dismiss the First Amended Consolidated Complaint *with prejudice* and enter judgment in favor of Sharp and against Plaintiffs.

Respectfully Submitted,

Dated: August 23, 2023          **BAKER & HOSTETLER LLP**

By:  */s/Teresa C. Chow*
          TERESA C. CHOW

*Attorneys for Defendant*
SHARP HEALTHCARE

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES