1   TERESA C. CHOW (SBN 237694)
    *tchow@bakerlaw.com*
2   ALEXANDER VITRUK (SBN 315756)
    *avitruk@bakerlaw.com*
3   **BAKER & HOSTETLER LLP**
    11601 Wilshire Boulevard, Suite 1400
4   Los Angeles, CA  90025-0509
    Telephone:  310.820.8800
5   Facsimile:   310.820.8859

6   PAUL G. KARLSGODT (*admitted pro hac vice*)
    *pkarlsgodt@bakerlaw.com*
7   **BAKER & HOSTETLER LLP**
    1801 California Street Suite 4400
8   Denver, CO 80202
    Telephone:  303.861.0600
9   Facsimile:   303.861.7805

10  JAMES R. MORRISON (*admitted pro hac vice*)
    *jmorrison@bakerlaw.com*
11  **BAKER & HOSTETLER LLP**
    999 Third Avenue, Suite 3900
12  Seattle, WA  98104-4076
    Phone:        206. 332.1380
13  Facsimile:   206.624.7317

14  *Attorneys for Defendant*
    SHARP HEALTHCARE
15

16                  **UNITED STATES DISTRICT COURT**

17                  **SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 18  HANNAH COUSIN, LINDA CAMUS, and EDWARD BARBAT individually | Case No.: 3:22-cv-02040-MMA-DDL |
| 19  and on behalf of all others similarly situated, | **DEFENDANT SHARP HEALTHCARE'S REPLY IN** |
| 20 | **SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT** |
| 21          Plaintiffs, | |
| 22      v. | Date:         10/23/2023 |
| 23  SHARP HEALTHCARE, | Time:         2:30 p.m. Location:     Ctrm 3C Judge:        Hon. Michael M. Anello |
| 24          Defendant. | |
| 25 | Action Filed:  11/22/2022 Consolidated |
| 26 | Action Filed:  03/03/2023 |

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Defendant SHARP HEALTHCARE ("Sharp") respectfully submits this Reply

2  in support of Sharp's Motion to Dismiss Amended Complaint [ECF No. 28].

3  **I.    INTRODUCTION**

4    The Court dismissed Plaintiffs' original complaint on multiple legal grounds.

5  *See* generally Dkt. 20. The only *factual* allegations Plaintiffs added in their Amended

6  Complaint are (a) their alleged medical circumstances, (b) their browsing of Sharp's

7  ***public website***; and (c) Plaintiff Camus allegedly booking one appointment for a

8  common medical condition on the public website. As explained below, these newly

9  pled facts should not survive Sharp's pending motion to dismiss.

10    In their opposition to Sharp's motion, Plaintiffs do not argue, and therefore

11  concede, that their allegations are primarily focused on their alleged browsing

12  activity on Sharp's public website. The Court was unequivocal: "Plaintiffs cannot

13  maintain their claims . . ." Order at 6:13-15. That makes sense—an alleged ***privacy***

14  violation based on the browsing of ***public*** webpage(s), is no privacy violation at all.

15    Since Plaintiffs' new allegations regarding their own medical circumstances

16  concern their (non-actionable) browsing activities on the public website only, the

17  Court should disregard such red herrings. As for Plaintiff Camus' single appointment

18  booking, that allegation still fails to establish that any sensitive health information

19  was actually transmitted to Meta (much less even identifies Camus).

20    Instead of pleading *facts* to support their claims, Plaintiffs rely heavily on

21  December 1, 2022 guidance from the Office of Civil Rights (OCR) regarding the

22  HIPAA Privacy Rule (Dkt. 28 at 1, 3-4, 15), but that guidance is neither a factual

23  allegation nor a lifeline for Plaintiffs' claims because:

24    • The federal HIPAA Privacy Rule[1] is not at issue in any of the state

25    law claims at issue in this litigation. It is therefore legally

26

27  [1] HIPAA does not even allow for a private cause of action. *Webb v. Smart Document Sols., LLC*, 499 F.3d 1078, 1082 (9th Cir. 2007).

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    inconsequential as a matter of law, as another court in Illinois has

2    held in similar cases. *Kurowski v. Rush System for Health*, No. 1:22-

3    cv-05380, 2023 WL 4707184, at *3-4 (N.D. Ill. July 24, 2023).

4    • The OCR guidance is nonbinding and cannot be applied

5    retroactively.[2] *Kurowski*, 2023 WL 4707184, at *3-4; *Bowen v.*

6    *Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) (refusing to

7    apply administrative rule retroactively; "Retroactivity is not favored

8    in the law … and administrative rules will not be construed to have

9    retroactive effect unless their language requires this result.").

10   Plaintiffs' claims also fail for the separate reasons highlighted in Sharp's

11   motion to dismiss. Dkt. 28 at 14-25. The authorities Plaintiffs cite in their opposition

12   are distinguishable, as explained below. For instance, Plaintiffs rely heavily on *Doe*

13   *v. Regents of Univ. of Cal.*, No. 23-cv-00598-WHO, 2023 WL 3316766 (N.D. Cal.

14   May 8, 2023), but that case involved data allegedly entered in a private, password-

15   protected patient portal, not public website browsing activity like here.

16   Sharp respectfully asks the Court to dismiss the Amended Complaint without

17   leave to amend because further amendment would be futile.

18   **II.    PLAINTIFFS' CLAIMS REMAIN BASED PRIMARILY ON PUBLIC**

19   **WEBSITE BROWSING ACTIVITY, WHICH IS NOT ACTIONABLE**

20   The Court could not have been clearer in its July 12, 2023, Order Granting

21   Sharp's Motion to Dismiss:

22   *"Plaintiffs cannot maintain their claims based upon the theory that*
23   *Defendant's sharing of their browsing activity, collected on its publicly facing*
     *website, is a disclosure of their sensitive medical information."*
24

25   Dkt. 20 at 6:13-15 (emphasis added). Stated differently, a violation of ***privacy***

26

27   [2] *See Kurowski*, 2023 WL 4707184 at *7 ("[T]he HHS guidance . . . is not controlling and only
     applies prospectively.").

28

1  based on the browsing of a ***public*** website, would be an oxymoron.

2  The Court saw through Plaintiffs' repeated characterizations of their browsing

3  activity on a public website as "sensitive medical information" and similar

4  conclusory terms. The Court also distinguished between public website browsing

5  activity and "alleged disclosure of sensitive health information on Sharp's

6  appointment scheduling page." Dkt. 20 at 6, 11. But the only factual allegation

7  Plaintiffs added regarding the scheduling of any appointment appears on Paragraph

8  81, where Plaintiff Camus allegedly booked one appointment for a common medical

9  condition on "Sharp's website and related subpages." *Id*. Camus fails to allege what

10  sensitive health information, if any, was actually disclosed to Meta (much less even

11  identified Camus). Moreover, the Court had ruled: "Plaintiffs fail to allege that these

12  [appointment scheduling] webpage interactions took them to a patient portal or

13  otherwise plausibly conveyed their patient status." *Id*. at 6:27-7:1. Plaintiffs still fail

14  to allege this.

15  Stripped of conclusory terms, Plaintiffs' allegations in the Amended

16  Complaint based on the browsing of a public website, and the alleged booking of one

17  appointment by one named plaintiff for one common medical condition that still does

18  not establish the disclosure of sensitive health information (much less sensitive health

19  information identifying that one plaintiff), still fail to state a viable claim.

20  **III.   THE CIPA CLAIM REMAINS DEFECTIVE AND SHOULD BE**

21  **DIMSISED**

22  **A.   The CIPA is Not Violated Through the Use of Web Browsing**
   **Technology on a Public Website**

23

24  It is axiomatic that, to state a claim under the California ***Invasion of Privacy***

25  Act (CIPA), there must be an actual invasion of privacy. *Campbell v. Facebook, Inc.*,

26  951 F.3d 1106, 1118 (9th Cir. 2020). That necessarily means that a ***private***

27  ***communication*** must be at issue. *Id*. After all, the CIPA was enacted to deter

28

4

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1   wiretapping and eavesdropping of private communications, not monitoring the

2   routine use of web browsing technology on a public website. *Id*. ("CIPA's purpose

3   [] includes protect[ing] the right of privacy of the people of [California], because the

4   invasion of privacy resulting from the use of new technology to eavesdrop[] upon

5   private communications causes a serious threat to the free exercise of personal

6   liberties.") (internal quotations and citation omitted).

7          To that end, the Court ruled: "Plaintiffs do not provide sufficient factual

8   support to plausibly claim their content was intercepted by Meta as a result of

9   installing Meta Pixel on Sharp's webpage." Dkt. 20 at 16:27-17:1.

10          As illuminated by the Amended Complaint, there is no alleged private

11   communication to invade here, let alone the contents of one. Plaintiffs brazenly state

12   that "all communications" are subject to a CIPA claim, but cite no legal authority for

13   such a sweeping proposition, which would defy the legislative intent behind CIPA.

14          Plaintiffs' reliance on cases like *Saleh v. Nike, Inc*., 562 F. Supp. 3d 503, 521

15   (C.D. Cal. 2021) and *Doe v. Regents of the Univ. of Cal.*, 2023 WL 3316766 is

16   misplaced. *Saleh* is a session replay case capturing users' movements in real time,

17   including clicks, typing, scrolling, swiping, tapping, key strokes, geographic

18   location, IP addresses, and data entry, not a pixel case where patients were browsing

19   on a healthcare defendant's public facing website. And *Doe v. Regents* is easily

20   distinguishable because it involved alleged disclosures within a secure and ***private***

21   patient portal, unlike here. The CIPA claim should be dismissed with prejudice.

22          **B.      Plaintiffs Have Still Failed to State Facts Showing "Contents" of any
23          Communication Were Intercepted by Meta on the Public Website**

24          This case is still about the alleged disclosure of URL record information on a

25   public website. *In re Zynga Privacy Litig.*, 750 F.3d 1098 (9th Cir. 2014) is on point

26   and instructive. In *Zynga*, the court explained a URL could disclose that a person

27

28
                                        5

viewed the "page of a gay support group," yet held that such URLs "function[] like an 'address,'" not "contents" of a communication. *Id.* at 1107.

As the Court previously explained when it dismissed the CIPA claim, "Plaintiffs do not provide sufficient factual support to plausibly claim their content was intercepted by Meta as a result of installing Meta Pixel on Sharp's webpage." *See* Dkt. 20 at 16:27-17:1.

No new factual allegation in the Amended Complaint changes this reality. Plaintiffs merely recite the legal conclusions that "medical information," "protected health information," "sensitive personal and health information," or "confidential medical information" are transmitted to Meta, without alleging any facts showing how this purportedly happens. *See, e.g.*, Dkt. 23 at ¶¶ 4-6, 29, 49, 90, 96, 118, 150. Accordingly, Plaintiffs' bareboned allegations regarding browsing data on Sharp's public website do not constitute "content information" under the CIPA.

Plaintiffs attempt to analogize public URL record information with live questions over the telephone about medical conditions, claiming these two scenarios are "no different." Dkt. 32 at 10:13-17. This farfetched analogy lacks legal support.

The cases Plaintiffs rely upon are distinguishable from the facts pled here. For instance, in *Katz-Lacabe v. Oracle America, Inc.*, No. 22-cv-04792-RS, 2023 WL 2838118 (N.D. Cal. Apr. 6, 2023), Oracle allegedly (a) used its **own** seven (7) different technologies; (b) to secretly store users' "life events (*e.g.*, marriage), education . . . health and wellness (*e.g.*, weight, sleep habits, and categories like 'Aging & Geriatrics' and 'Pain Relief,')"; and (c) worked with 65 data brokers to "profit from the sale of allegedly sensitive personal information including race, location, politics, and medical information." *Id*. at *1-2.

*In re Meta Pixel*, No. 22-cv-03580-WHO, 2022 WL 17869218 (N.D. Cal. Dec. 22, 2022) analyzed different facts that are unique to Meta as the developer of the Pixel. There, the Court denied plaintiffs' motion for preliminary injunction against

DEFENDANT SHARP HEALTHCARE'S REPLY IN SUPPORT
OF MOTION TO DISMISS AMENDED COMPLAINT
CASE NO. 3:22-CV-02040-MMA-DDL

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1  Meta in a consolidated class action against Meta, which sits in a completely different

2  position than healthcare providers.

3  **IV.   THE CMIA CLAIM REMAINS DEFECTIVE AND SHOULD BE**

4  **DISMISSED**

5      **A.   No Medical Information is at Issue**

6      As a threshold matter, Plaintiffs concede that patient status is not actionable

7  under the CMIA. Dkt. 32 at 14:8-10; *Eisenhower Med. Ctr. v. Super. Ct*., 226 Cal

8  App. 4th 430, 436 (2014) (explaining the "fact that he or she was a patient is not in

9  itself medical information.").

10      Next, just because Plaintiffs pled facts regarding their medical circumstances,

11  does not mean that their sensitive medical information was actually transmitted to

12  Meta. Plaintiffs still fail to allege what, if any, sensitive medical information was

13  ever transmitted to Meta (including in regard to Plaintiff Camus allegedly booking

14  one appointment for one common medical condition).

15      After all, this case is about Plaintiffs allegedly browsing public webpages, as

16  the Court observed and cited to *Smith v. Facebook, Inc*., 262 F.Supp.3d 945, 955

17  (2017), aff'd, 745 F. App'x 8, 9 (9th Cir. 2018) (Dkt. 20 at 6), which held that the

18  disclosure to Meta of browsing history on healthcare providers' public websites, as

19  alleged here, was *not* protected health information.

20      Despite the Court correctly citing to *Smith* in ruling that no medical

21  information is at issue, Plaintiffs now seek to distinguish *Smith* in their Opposition.

22  Their efforts are unavailing. *First*, there is no legal distinction between the myriad

23  public websites at issue in *Smith* and Sharp's public website. Browsing history on a

24  public website does not constitute protected health information, regardless of the

25  public website. *Second*, Plaintiffs attempt to mislead the Court in insinuating that

26  only "cancer.net" is at issue in *Smith*. Not so. "Cancer.net" was merely used as an

27  example. *Smith* involved seven (7) healthcare defendants—including at least four (4)

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

hospital systems like Sharp—that "operate websites that publish information about medical conditions and treatments" (like Sharp). *Smith*, 262 F.Supp.3d at 947. One of them was cancer.net. Another was www.mdanderson.org. *Id*. at 954-955, n.7 (describing "URLs at issue" across different websites that "contain general health information to the public at large" and that do *not* constitute PHI).

### a. No one at Meta is Alleged to Have Actually Viewed any Plaintiff's Alleged Medical Information

The Court made clear that Plaintiffs cannot state "a conclusion without sufficient factual support" as to whether anyone at Meta had actually viewed any alleged medical information of any Plaintiff, as required to state a CMIA claim. Dkt. 20 at 14:25; *Sutter Health v. Super. Ct.*, 227 Cal. App. 4th 1546, 1553 (2014); *Regents of Univ. Cal. v. Super. Ct.*, 220 Cal. App. 4th 549, 570 (2013).

In the Amended Complaint, Plaintiffs continue to rely on pure speculation. Even the most generous interpretation of Paragraph 29 would show—at best—that it is merely "possible" someone at Meta could have viewed a hypothetical plaintiff's data (as opposed to some sort of code or algorithm picking up any alleged data). *See* Dkt. 23 at ¶ 29. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Plaintiffs attempt to create a new pleading standard by cherry picking sound bites from inapposite cases. *Pruitt v. Par-A-Dice Hotel Casino*, No. 1:20-cv-1084-JES-JEH, 2020 WL 5118035, at *2 (C.D. Ill. Aug. 31, 2020), an out-of-circuit BIPA case, involved well-pled facts showing that the defendant was using facial recognition software and plaintiffs' facial geometry was used by the defendants, making it "entirely plausible that Defendants used biometric identifying equipment." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Northwest India*, 786 F.3d 510 (2015) is another out-of-circuit decision analyzing the Rehabilitation Act. In *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011), the plaintiff's complaint survived a motion to dismiss because, unlike here, the complaint had "detailed factual

DEFENDANT SHARP HEALTHCARE'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT
CASE NO. 3:22-CV-02040-MMA-DDL

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

allegations" that were "neither bald nor conclusory." And *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) was a civil conspiracy case where, unlike here, the facts related to defendant's conspiracy were only known to the defendant.

In dismissing Plaintiffs' original complaint, the Court observed that no Plaintiff "allege[s], for example, that she received or was subjected to an increase in any targeted advertisements. And that Meta could collect and view the information of a hypothetical patient does not support Plaintiff's claim." Dkt. 20 at 14:25-28. There are no such factual allegations in the Amended Complaint.

Plaintiffs also mischaracterize the Court's dismissal based on an absence of "supporting facts regarding Meta's business model" (Dkt. 32 at 16:18-21), but that is not the operative legal issue. The operative issue is whether anyone at Meta actually viewed any medical information (as opposed to an algorithm or source code). *Sutter Health*, 227 Cal. App. 4th at 1553; *Regents of Univ. Cal. v. Super. Ct.*, 220 Cal. App. 4th at 570. Plaintiffs have not pled facts showing that this is plausible but merely "possible" at best. *Iqbal*, 556 U.S. at 679.

## V. THE CONSTITUTIONAL INVASION OF PRIVACY CLAIM HAS BEEN ABANDONED AND SHOULD THEREFORE BE DISMISSED

Money damages are not available for an alleged violation of the California Constitution, Art. I, Sec. I. Dkt. 20 at 12:21-13:1, 18:15-19. The Court should dismiss the Constitutional invasion of privacy claim without leave to amend.

## VI. THE INVASION OF PRIVACY – INTRUSION UPON SECLUSION CLAIM REMAINS DEFECTIVE AND SHOULD BE DISMISSED

This Court previously dismissed the intrusion upon seclusion claim "to the extent [it is] based upon browsing activity," because "none of these alleged disclosures made during routine browsing activity rise to the level of 'highly offensive.'" Dkt. 20 at 11:9-14. The Court further explained its reasoning:

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT SHARP HEALTHCARE'S REPLY IN SUPPORT
OF MOTION TO DISMISS AMENDED COMPLAINT
CASE NO. 3:22-CV-02040-MMA-DDL

"Plaintiffs postulate that Sharp disclosed its patients' information to Meta and that the data could be de-anonymized through the matching of Facebook IDs. But as discussed above, it is not clear that anyone has actually done so, or what information, precisely, Plaintiffs shared with Sharp that was subsequently obtained by Meta. However, ***it is clear that even if Plaintiffs had alleged all these facts sufficiently, disclosing a user's browsing history does not plausibly reach the level of "highly offensive" conduct under either common law or the California Constitution***."

*Id.* at 10:18-24 (emphasis added). As explained above, Plaintiffs' allegations remain focused on public website browsing history and therefore do not rise to the level of "highly offensive" necessary to state a common law privacy claim. Plaintiffs are also improperly attempting to relitigate the Court's prior ruling.

Plaintiff Camus' sole allegation regarding booking one appointment for one common medical condition does not rise to "highly offensive" either because (a) she fails to allege what sensitive health information, if any, was actually disclosed (let alone sensitive health information that identifies her), and (b) the common medical condition Camus cited does not reach the high bar of "highly offensive." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) ("The California Constitution and the common law set a high bar for an invasion of privacy claim.")

Plaintiffs also point to cases like *Doe v. Regents of the Univ. of Cal.*, 2023 WL 3316766, *In re Facebook Tracking Litig.*, 956 F.3d 599 (9th Cir. 2020), *In re Solar Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284 (S.D. Cal. 2020), and *Ruiz v. Podolsky*, 50 Cal. 4th 838 (2010) but there is no comparison.

In *Doe v. Regents of the Univ. of Cal.*, 2023 WL 3316766 at *4, the Court found the plaintiff sufficiently alleged a common law invasion of privacy claim when she alleged that she entered information into the private, password protected patient portal that allegedly contained the Meta Pixel. Unlike *Doe v. Regents*, Plaintiffs' allegations concern their browsing on Sharp's public facing website only.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

10

DEFENDANT SHARP HEALTHCARE'S REPLY IN SUPPORT
OF MOTION TO DISMISS AMENDED COMPLAINT
CASE NO. 3:22-CV-02040-MMA-DDL

*In re Facebook Tracking Litig.*, 956 F.3d 599 involved allegations even more distinguishable from this case: defendant Facebook (not a user of Facebook technology) used plug-ins to **track logged-out users' browsing histories when they visited third-party websites** and then compiled the browsing histories into personal profiles sold to advertisers to generate revenue. Nothing like that is alleged here against Sharp, as explained above.

Plaintiffs' reliance on *In re Solar Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284, and *Ruiz*, 50 Cal. 4th 838 are easily distinguishable because neither case even involved an invasion of privacy claim.

Finally, Plaintiffs' attempt to distinguish *Kurowski* is unavailing. While admitting the Court in *Kurowski* dismissed an intrusion upon seclusion claim against a hospital, like here, because the interception of the patients' alleged communication was carried out by third parties, Plaintiffs argue the Court should disregard *Kurowski* because "it did not address or analyze" the level of offensiveness. Dkt. 23:7-11; n.14. This distinction is without merit. The *Kurowski* court explained, in a virtually identical intrusion upon seclusion claim: "The question is therefore whether Kurowski has alleged sufficient facts to allow an inference that [the health care provider] intruded upon its patients' seclusion when it allowed third-party source code to collect the data Kurowski alleges is later disclosed. The Court concludes she has not." *Kurowski v. Rush System for Health*, No. 1:22-cv-05380, 2023 WL 2349606, at *9 (N.D. Ill. Mar. 3, 2023). Sharp respectfully asks the Court to find *Kurowski* instructive here.

## VII.   CONCLUSION

Plaintiffs' factual allegations in the Amended Complaint remain focused on public website browsing data, which the Court already ruled is not actionable. The Court should dismiss the Amended Complaint without leave to amend.

DEFENDANT SHARP HEALTHCARE'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT
CASE NO. 3:22-CV-02040-MMA-DDL

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Respectfully Submitted,

Dated: October 16, 2023       **BAKER & HOSTETLER LLP**


By:   */s/Teresa C. Chow*
            TERESA C. CHOW


*Attorneys for Defendant*
SHARP HEALTHCARE

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT SHARP HEALTHCARE'S REPLY IN SUPPORT
OF MOTION TO DISMISS AMENDED COMPLAINT
CASE NO. 3:22-CV-02040-MMA-DDL